[No. 22634. Department One. November 10, 1930.]

THOMAS BYRNE, *by his Guardian ad Litem Elizabeth S. Byrne, Appellant,* v. JOHN L. STANFORD *et al., Respondents.*[1]

*Parker & Ashman,* for appellant.

*Ellis & Evans,* for respondents.

MAIN, J.—The plaintiff, by his guardian *ad litem,* brought this action to recover damages for personal

[1]Reported in 292 Pac. 1014.

injuries, and also property damage. The cause came on for trial before the court and a jury. At the conclusion of the plaintiff's evidence, the defendants moved for a nonsuit, which motion was sustained, and judgment was entered dismissing the action, from which the plaintiff appeals.

The accident out of which the litigation arose happened at the intersection of Park street and Second street in the city of Hoquiam on May 24, 1929, at about the hour of eight o'clock p. m. Park street, an arterial highway, extends north and south; Second street, east and west. Both streets are paved, and the distance between the curbs on each street is twenty-nine feet. The respondent, John L. Stanford, who will be referred to as though he were the only party on that side of the controversy, was proceeding north on Park street, driving a Buick sedan which he owned. The appellant, a boy about nineteen years of age, was proceeding in the same direction on a motorcycle. When the two vehicles were about one hundred and fifty feet south of the intersection, they were traveling at a speed of between twenty-five and thirty miles per hour, the motorcycle being a short distance behind the automobile and traveling at a little greater speed.

As they approached the intersection, the appellant threw off the power of the motorcycle and coasted on compression. When the motorcycle was five or six feet behind the automobile, the appellant sounded the horn, and the two vehicles were crossing the intersection at a speed of about twenty miles per hour. When they were half way across, or a little more, the automobile turned suddenly to the left without giving any warning signal, and was struck on the left front by the motorcycle.

The appellant testified that he did not attempt to pass until it appeared to him that the automobile was

a sufficient distance across the intersection, that it would not turn, and that when the automobile turned the front end of the motorcycle was opposite the rear end thereof. After the accident the respondent stated to one or two witnesses that he looked through his rear vision mirror, saw nothing, and turned to avoid a parked automobile. There is no evidence as to the location of this automobile. He further stated that he did not intend to make a left turn at that intersection.

A witness who was about one hundred and fifty feet south of the intersection and on the east side of the street at the time, and saw the accident, testified that the automobile appeared to "swerve" to the left, and that it turned sufficiently to enable him to see the left front wheel. There was evidence that this wheel, at the time of the collision, was a little over the center line of Park street as it crossed the intersection. There is no evidence as to how much time elapsed after the appellant sounded his horn before he pulled up beside the automobile preparatory to passing. The motorcycle was three or four feet to the left of the automobile as they were proceeding across the inter- section. The evidence is direct and positive that the respondent gave no signal of his intention to turn to the left.

■ The first question is whether the evidence is sufficient to take the question of negligence to the jury, and upon this little need be said. The jury had a right to find that the respondent was making the turn in the intersection, and had not given the signal of his intention to do so, as required by law. Section 6362-41, Rem. 1927 Sup., which is one of the sections of the vehicle operation act, in part provides:

"And it shall be the duty of every such person about to turn from a standstill or while in motion to give a timely signal from the left side of such motor vehicle, indicating the direction in which he intends to turn as

follows: If he intends to turn to the left he shall extend his arm in a horizontal position from the left side of such motor vehicle for a reasonable length of time; . . ."

The jury, from the evidence offered, had a right to find that this signal was not given, and that the respondent intended to turn and was turning in the intersection. The fact that the respondent stated that he did not intend to turn in the intersection, and that he was turning to the left to avoid a parked automobile, does not in law overcome the other facts which the jury had a right to find from the testimony, and which showed negligence. It is true that after the accident the automobile straightened up and was headed to the north, but this was not a controlling circumstance because that would be the ordinary thing that would take place after the vehicles had come together. The question of whether the respondent was negligent was for the jury.

■ The next question is whether the appellant was guilty of contributory negligence as a matter of law. It is said that he was thus guilty because he was proceeding across the intersection at twenty miles an hour, when the speed limit was fifteen. Section 6362-3, Rem. 1927 Sup., which is also one of the sections of the vehicle operation act, with reference to the speed of vehicles in part provides:

"Fifteen miles an hour in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of three hundred feet from such intersection."

By this statute it will appear that the speed limit of

a motor vehicle across an intersection, where the view is obstructed as therein provided, is fifteen miles per hour. It is plain, however, that the primary purpose of that provision in the statute is for the protection of those entering from side streets. Whether the view was obstructed upon any corners of the intersection, could not have any possible bearing as protecting one vehicle against the other when they were crossing the intersection going in the same direction. The statute was not passed for the protection of one in the situation of the respondent at the time the accident happened, and therefore he cannot claim the benefit thereof. In *Rampon v. Washington Water Power Co.*, 94 Wash. 438, 162 Pac. 514, it was said:

"The object of the traffic ordinance is to protect pedestrians and vehicles and to avoid collisions. . . . We have held that similar ordinances had no application unless the one invoking the ordinance can say that the ordinance was enacted for his benefit. Wherefore, it has been frequently held that it is not negligence *per se* for a person to drive at an unlawful rate of speed, or upon the wrong side of the street, if the non-observance of the traffic ordinance did not result in injury to the one for whose benefit it had been enacted." (Citing authorities.)

The cases of *Bogdan v. Pappas,* 95 Wash. 579, 164 Pac. 208, and *Stoddard v. Smathers,* 120 Wash. 53, 206 Pac. 933, are to the same effect.

The case of *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, is not controlling. There the stage was proceeding west on an arterial highway, and as it crossed the intersecting street, an automobile approaching from the right ran into it on the right hand side. It was there held that the fifteen miles an hour limit fixed by the statute, an excerpt of which is above quoted, applied even though there was no obstruction upon the northeast corner of the intersection.

What is said in the opinion in that case by way of argument must be read in the light of the particular facts then before the court. In the case now before us, whether there were buildings or objects upon any or all of the corners of the intersection which obstructed the view of the intersecting street, could have no bearing upon the right of one of the parties to the present controversy as against the other. The statute does not fit the facts now before us, and is not applicable.

■ There is a further question as to whether the appellant was guilty of contributory negligence in failing to sound his horn a sufficient length of time before he attempted to pass, in order that the respondent might be reasonably informed of his intention to do so. The evidence does not show, as above stated, how much time elapsed after the sounding of the horn and the time when the vehicles came together. It must be remembered that contributory negligence is an affirmative defense, and the burden is upon the one asserting it. In the absence of any showing as to the length of time that elapsed between the sounding of the horn and the time when the vehicles came together, under the facts of this case, it cannot be held that the appellant was guilty of contributory negligence as a matter of law in this respect. The question of contributory negligence, as well as the primary negligence of the respondent, was for the jury.

The judgment will be reversed and the cause remanded, with instructions to the superior court to grant a new trial.

MITCHELL, C. J., PARKER, and TOLMAN, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent from the limitation and qualification put upon § 6362-3, Rem. 1927 Sup. In my opinion it is of general application to all vehicles.