[No. 22920. Department One. March 9, 1931.]

WILLIAM A. SPACE, *Appellant,* v. TACOMA DURANT COMPANY, *Respondent.*[1]

[1]Reported in 296 Pac. 822.

*Charles T. Peterson* and *G. E. Peterson,* for appellant.

*Hayden, Langhorne & Metzger,* for respondent.

PARKER, J.—This is a street intersection automobile collision case. The plaintiff, Space, seeks recovery of damages from the defendant, Durant company, for injuries to his person and his automobile, suffered, as he claims, as the result of the negligent driving by the Durant company's servant of its automobile. The Durant company, by cross-complaint, seeks recovery of damages from Space for damages to its automobile, suffered, as it claims, as the result of the negligent driving by Space of his automobile.

A trial upon the merits in the superior court for Pierce county, sitting with a jury, resulted in a verdict awarding to Space recovery against the Durant company in the sum of twenty-five hundred dollars. Counsel for the Durant company thereupon moved the court for a new trial, assigning the several statutory grounds therefor. The court entered its order granting the motion, from which order Space has appealed to this court.

For purposes of our present inquiry, we think the principal controlling facts may be sufficiently summarized as follows: McKinley avenue, a paved arterial highway in Tacoma, runs north and south. It is intersected by South 54th street, running east and west. The paved roadway on the avenue is forty feet wide between curbs, but at its intersection with 54th

street, the pavement is the full width of the avenue between the projected property lines. 54th street is not paved, though it is graded level with the avenue pavement. The block bounded on the north by 53rd street, on the west by the avenue, and on the south by 54th street, is occupied by a public school and its grounds. On the center line of 54th street, and one or two feet west of the projected west curb line of the avenue, is a stop sign in the form of a commonly used button, warning drivers coming from 54th street into the arterial avenue to stop.

At about fifteen minutes to five o'clock in the afternoon of the occurring of the accident in question, Space was driving his Ford coupe south, on the west side of the pavement of the avenue approaching 54th street. His purpose was to turn back north in the 54th street intersection, stop on the east side of the avenue in front of the schoolhouse, and get his wife, who was a teacher at that school, as was his custom at about that time on each school day. At the same time, a servant salesman of the Durant company was driving its Durant coach south, on the west side of the pavement of the avenue, following Space at some distance behind him. He had no intention of stopping or turning at 54th street, but intended to proceed on south.

Space slowed down just before reaching 54th street and turned to his right, passing either over the stop button in the middle of 54th street just west of the west curb line of the avenue, or passing clear around the stop button to the west, and on that part of 54th street not within its intersection with the avenue. He then turned to the east, intending to turn back north on the east side of the avenue, and came to a stop, or very nearly so, with the front of his coupe some three to five feet east of the west curb line of the avenue. At that moment, the Durant coach coming from the

north struck Space's coupe on the left side near the front.

The collision threw Space's coupe to the west and south. It came to rest on its side near the curb at the southwest corner of the street intersection. The Durant coach was thrown to the east and south, where it came to rest on its side near the east curb of the avenue, some seventy-five feet south of 54th street. There is evidence tending to show that the Durant car was being driven past the school grounds at a speed, estimated by different witnesses, of from twenty-five to forty-five miles per hour. Its speed at the instant of the collision may have been less. The result of the collision throws some light on its speed at that moment.

Space testified that, as he approached 54th street, he put out his hand to the left, signalling his intention to turn to the left. The driver of the Durant car testified that, while Space put out his hand, he did so in such a manner by holding it up as to indicate his intention to turn to his right into 54th street, and that he did so turn to his right into 54th street to the west of the intersection, and then suddenly turn back into the intersection without stopping.

The trial judge conceived that he had been led into error, to the prejudice of the Durant company, in giving to the jury his instruction No. 7, reading as follows:

"You are instructed that under the laws of the State of Washington it is unlawful to drive an automobile in excess of fifteen (15) miles an hour when passing a schoolhouse on school days between eight o'clock in the morning and five o'clock in the afternoon,"

when considered in connection with the language of his instruction No. 16, reading as follows:

"You are instructed that if you find from the evidence that either the plaintiff or said Locke were driv-

ing their respective automobiles in violation of any of the ordinances or laws of the State of Washington to which I have called your attention, then such violation on the part of either of them would constitute negligence."

These instructions, it may be conceded, are correct as abstract propositions of law, since, by subdivision 4 of § 3, chapter 309, Laws of 1927, p. 770 (Rem. 1927 Sup., § 6362-3), the prescribed statutory speed limit is "fifteen miles an hour when passing a schoolhouse on school days between eight a. m. and five p. m.," and § 42 of that chapter which reads as follows:

"Failure upon the part of the operator of any motor vehicle to exercise due care and caution in compliance with all traffic laws and requirements in passing a schoolhouse, on school days, between eight a. m. and five p. m., shall be *prima facie* evidence of reckless driving." Rem. 1927 Sup., § 6362-42.

The error in these instructions, prejudicial to the Durant company, it seems to us, lies in the fact that the collision here in question did not occur while the Durant car was "passing a schoolhouse." The collision occurred some forty feet south of the extreme south line of the schoolhouse grounds; therefore the court gave to the jury a rule of law not applicable to the question of the driver of the Durant car having violated that rule of law at the time and place of the collision.

We may concede, for present purposes, that the prescribed fifteen mile speed limit, when passing schoolhouses between eight a. m. and five p. m., is for the protection, not only of pupils attending the school, but also for the protection of all other persons lawfully within that traffic zone. That, however, does not argue that the prescribed fifteen mile speed limit is for the protection of those who are clearly outside that

zone of traffic, as these cars were when the collision occurred. Our recent decision in *Byrne v. Stanford,* 159 Wash. 271, 292 Pac. 1014, and our former decisions therein noticed, we think, support this conclusion.

We are of the opinion that the trial court did not err in awarding to the Durant company a new trial because of the giving of instruction No. 7, read in connection with instruction No. 16. The trial judge, in his order granting a new trial, limited the grounds therefor to the error in instructing the jury, as above noticed, and also to one other occurrence during the trial which we need not here notice, since it is not likely to occur upon a new trial.

Counsel for the Durant company, by appropriate timely motions, challenged the sufficiency of the evidence to sustain any recovery against it; and now argue that upon that ground it is entitled to have judgment absolving it from liability as a matter of law. We deem it sufficient to say that a reading of this record convinces us that we should not so decide.

Counsel for the Durant company make other claims of error occurring in the trial, as additional support to the order granting a new trial. In view of what seems likely to arise upon a new trial, we deem it appropriate to here notice one or two of these claims of error. Counsel for Space, by cross-examination, was permitted, over the objections of counsel for the Durant company, to ask of and have the driver of the Durant car answer as follows:

"Q. Do you recall going out and seeing Mrs. Schibel about two or three days after the accident, calling at her home? [Mrs. Schibel had witnessed the collision.] A. Yes. Q. Didn't you state to Mrs. Schibel in substance that 'I guess maybe I was going pretty fast, but the old man,' " referring to Mr. Duncan, " ' 'was a pretty good prospect, and I wanted to show the car up in good shape,' or words to that effect?

[Mr. Duncan was riding with the driver at the time of the collision.] A. I did not. Q. And didn't you further state to her in substance that 'maybe I was to blame for the accident?' A. I certainly did not.''

Thereafter, over the objections of counsel for the Durant company, counsel for Space was, by the court, permitted to ask of Mrs. Schibel and have her testify that the driver made those statements to her. Those questions were asked the driver as cross-examination, and for the further purpose of laying grounds for impeaching the driver. As to the second question, it seems plain it was not proper cross-examination, since the driver had not, in his direct examination, testified as to the speed he was driving at any time.

As to both the second and third questions, viewed as an attempted laying of foundations for impeachment of the driver by having Mrs. Schibel testify to the contrary, they and their answers, it seems to us, were clearly not grounds for impeachment. The driver was not a party to this action. These statements sought to be proven as admissions made by the driver were not admissions by the Durant company or by the driver with any authority to bind the Durant company as to any fact therein stated by the driver.

Of course, it cannot be seriously contended that these statements of the driver were admissible as a part of the *res gestae*, they being in no sense spontaneous and not having been made, if at all, until two or three days after the accident. The applicable rule is briefly well stated in the text of 22 C. J. 379, as follows:

''It is well established that admissions made by an agent in a narrative statement of a past transaction cannot be received in evidence against his principal.''

This view is somewhat more elaborately stated in the text of 1 R. C. L. 510. Our decisions have repeatedly recognized this to be the law: *Weideman v. Tacoma R. & Motor Co.*, 7 Wash. 517, 35 Pac. 414; *Cook v. Stimson Mill Co.*, 36 Wash. 36, 78 Pac. 39; *Harris v. Carstens Packing Co.*, 43 Wash. 647, 86 Pac. 1125, 6 L. R. A. (N. S.) 1164; *Caldwell Bros. & Co. v. Coast Coal Co.*, 58 Wash. 461, 108 Pac. 1075; *Goodwin v. Stimson Mill Co.*, 95 Wash. 41, 163 Pac. 2.

We conclude that the order granting a new trial must be affirmed. It is so ordered.

TOLMAN, C. J., MAIN, MITCHELL, and HOLCOMB, JJ., concur.

[1]Reported in 296 Pac. 831.