[No. 24291. Department One. March 17, 1933.]

JOSEPHINE SHINKLE, *Respondent,* v. NORTH COAST TRANSPORTATION COMPANY *et al., Appellants.*[1]

*Bogle, Bogle & Gates* and *Ray Dumett,* for appellants.

*Edwin H. Flick* and *Herald A. O'Neill,* for respondent.

HOLCOMB, J.—Two cases are involved in this appeal, consolidated for trial and appeal, arising out of an automobile accident which occurred on Sunday afternoon, June 22, 1930, at about three o'clock. In one action, respondent sues individually for losses sustained by her as personal injuries alleged to have been caused by the negligence of a stage operated by appel-

[1]Reported in 19 P. (2d) 1111.

lant. In the other, respondent sues in her representative capacity for loss sustained by the death of her husband occurring in the same accident. In the first action, the verdict of the jury was for one thousand five hundred dollars for personal injuries to respondent, and in the other for three thousand dollars for damages sustained by the death of her husband.

The actions had been twice previously tried, the juries in both trials disagreeing and being discharged from consideration thereof.

In both cases, appellants interposed the defense of contributory negligence. At the trial, at the conclusion of the evidence on behalf of respondent, appellants moved to dismiss the actions upon the ground that it conclusively showed contributory negligence on the part of respondent, as a matter of law. After the verdicts had been returned by the jury, appellants moved for judgments *non obstante veredicto* upon the same ground. These motions were all denied by the trial court and judgments entered upon the verdicts.

The testimony by and on behalf of respondent, omitting repetitions and unnecessary details, was substantially as follows: The collision occurred on what is known as Victory way, leading north out of Seattle, at the intersection of 143rd street. Victory way is paved, twenty-seven feet in width, and is sufficiently wide for three traffic lanes. One hundred forty-third street is not paved on either side of the intersection.

Respondent was driving their Ford car herself, going north toward 143rd street, where she intended to turn in on their left, or west side of Victory highway. She testified that, quite a while before she came to the intersection, she held out her hand, signalling that she intended to make a left-hand turn, and two cars going north passed her. When the second car passed, hers was standing still. There was no traffic to the north

coming toward the south for three or four hundred feet distance, with the exception of one car that was closer. After the second car from behind her went by, she started across in second gear.

She looked to her right and then first saw the bus approaching behind another car and coming at a terrific rate of speed in the middle of the road, the driver's eyes focused to the southeast. He was not looking at her, but across the road to the left. She was close to the west line of the east lane of traffic travelling to the north when the second of the two cars that went by her passed. When she first saw the "head car," as she called it, approaching from the north, there was a group of cars north of the intersection about three or four hundred feet or more from it, and this particular car was ahead of them. Respondent started up to cross the west lane of traffic when she first saw the bus coming from her right. At that time, it was in the middle lane of the road, passing the other car. Her car was about in the center of the left intersection on the west side, broadside to the bus. She hurried to get across, because, if she had stood there with her car, the bus would have driven into it.

After she started on across the west lane of traffic, she noticed the bus had suddenly veered toward her car, and exclaimed to her husband that it was coming directly for them. When she saw the bus emerge from behind the one car in front of it and coming out into the middle lane of traffic, she had started and drove on across. When it emerged out into the center of the highway, it was beyond a house which was designated by all witnesses as the Cundy house. It was just about opposite the house when he was going alongside of the head car. The head car must have been fifty or sixty feet back at the time of the accident. The bus drove in front of it and bore down on her car.

The bus hurled her car about thirty-six feet and into some kind of a pole, and the bus went about sixty-seven feet, with its brakes set, and after such an impact as had occurred. Her husband was so badly injured that he died at three o'clock the next morning, and she was badly injured. Her estimate was that the bus was about one hundred fifty feet from her when it emerged from the lane of traffic on the west side of the highway into the middle lane of traffic and passed the head car. Her front car wheels were on the gravel west of the pavement when the bus struck her car.

Another and disinterested witness testified that he then lived and operated a gas station near the intersection in question. He was approximately one hundred fifty feet from a mail box on the west side of the highway which was two hundred fifty feet from the point of collision, when it happened. He saw the bus emerge from the west lane of traffic toward the middle of the road when it was near the mail box, which would make it about two hundred fifty feet from the point of impact.

Another witness testified that the bus was abreast of the head car about in front of the house heretofore mentioned as the Cundy house. When he first observed it, he thought it was about two hundred feet away; that from the time respondent got started from a standstill the bus went about two hundred feet. There was other disinterested testimony corroborating some of the distances and details as to the accident. The bus driver admitted that he never saw the car of respondent until he was about fourteen feet from it. Another witness testified that the better part of the Shinkle car was off the pavement when it was struck.

Another testified that he saw Mrs. Shinkle giving a signal for some distance back of the intersection that she was going to make a left turn; that there were

some cars approximately two hundred feet or more to the north coming south when the stage suddenly emerged into the center of the highway, and until it was within sixty-five or seventy feet of the intersection it continued in the center lane, and then suddenly veered to the right, right down on the side of the pavement on the west side; that the respondent's car was pretty well over so that the front wheels were off of the pavement when the crash occurred. There was further testimony on behalf of respondent that there was no car down the center lane of traffic, that is, none to interfere with the bus going down the center; that there was a single line of traffic going north.

Appellants cite Rem. Rev. Stat., § 6362-41, subd. 14, which requires drivers, when approaching public highway intersections, to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicles first enter and reach the intersection or not, etc.; and also cite *Webber v. Park Auto Transportation Co.*, 138 Wash. 325, 244 Pac. 718, 47 A. L. R. 590.

In the cited case we said:

"When automobiles approach each other from opposite directions, neither is on the right of the other. That condition can arise only when one of them changes its course. It may be that when the course of the automobile of the respondents was changed from a northerly to a westerly direction the condition arose, but, if so, the change placed the stage on the right, not the respondents, and, if the statute then became applicable, it was the duty of the respondents to yield the right of way, not the duty of the driver of the stage."

In that case, the plaintiffs turned off the highway to the left, and in front of the on-coming stage approaching well within the speed limit, and in a manner

indicating reckless driving, which is not the case here. Neither the statute nor that decision helps appellants.

In this case, if the evidence on behalf of respondent was credible, as the jury had the right to believe, the driver of the stage was driving at a terrific rate of speed, and respondent, as the driver of her car, had obeyed the rule of the road requiring signalling of intention to turn to the left, had got partly across the paved highway, was, in fact, over the center lane of traffic, when appellants' stage emerged from the lane of traffic on the west side of the paved highway, which naturally compelled respondent to proceed as she did to cross the highway. She did not drive blindly into a position of manifest danger. Had she stopped, she would have been struck. Had the driver of the stage kept to the center lane of the highway, which was unobstructed, he would have missed her. There was ample room to pass to the rear of the car driven by respondent, and had he been looking, which, according to his own testimony, he was not, since he did not see the car of respondent until he was about fourteen feet from it, he would have seen where his driving course was clear and unimpeded. Apparently, she exercised ordinary care, but that was a question of fact for the jury to determine.

This case, in the situation presented, therefore resembles the case of *Keller v. Waddington,* 142 Wash. 474, 253 Pac. 646.

This court has, with fair unanimity, followed the rule that an action for personal injuries should not be taken from the jury on the ground of plaintiff's contributory negligence unless the same so clearly appears that reasonable minds cannot differ as to the usual and probable results of the acts proven. *Romano v. Short Line Stage Co.,* 142 Wash. 419, 253 Pac. 657, and cases cited; *Byrne v. Stanford,* 159 Wash. 271, 292 Pac.

1014; *Denney v. Power,* 159 Wash. 465, 293 Pac. 451;
*Martin v. Westinghouse Electric & Mfg. Co.,* 162 Wash.
150, 297 Pac. 1098; *Nelson v. Owens,* 166 Wash. 647,
8 P. (2d) 301; *McIntyre v. Erickson,* 168 Wash. 355,
12 P. (2d) 399.

The decision in *Strouse v. Smith,* 166 Wash. 643, 8
P. (2d) 411, strongly relied upon by appellant, is
widely different in its facts from this. There, the col-
lision occurred in a street intersection. The plaintiff
did not, in approaching the intersection, look out for
and give right of way to the vehicle on his right. He
did not claim to have looked to the right until the front
end of his car was into the intersection. He did not
comply with the statutory provision requiring drivers
to look out for vehicles on their right as he entered the
intersection. Had he done so, as we said, he would
have sustained no injuries. Cf. *McIntyre v. Erickson,
supra.*

We conclude that the trial court would have erred
had it granted the motions for judgments *non obstante
veredicto.*

Appellants also complain of the allowance by
the trial court of the costs of the two former trials
against them.

Rem. Rev. Stat., § 476, provides in part:

"In any action in the superior court of Washington,
the prevailing party shall be entitled to his costs and
disbursements; . . ."

In *Briglio v. Holt & Jeffrey,* 91 Wash. 644, 158 Pac.
347, there had been one former trial and the judgment
thereon reversed on appeal. On a second appeal, ob-
jection was made to the taxation by the trial court of
the costs of the former trial and of the former appeal.
We held that appellant was entitled to his costs on the
former appeal, and also that the costs of the former
trial were properly allowed as incident to the judgment.

We know of no reason why the same rule should not apply here, although there were two former trials, both resulting in disagreements of the juries. Respondent has "prevailed" which, under the statute and the cited case, raises the presumption that she was entitled to prevail in both former trials. The last contention is unfounded.

The judgments are affirmed.

BEALS, C. J., MILLARD, MITCHELL, and PARKER, JJ., concur.