SARAH TUCKER, ADMINISTRATRIX OF THE ESTATE OF JACK B. TUCKER, DECEASED, v. HUBERT L. MOOREFIELD AND HUBERT L. MOORE-FIELD, JR.

(Filed 20 May, 1959.)

### 1. Appeal and Error § 51—

Where it is determined on appeal that nonsuit was correctly denied but a new trial is awarded for error in the charge, the Court will refrain from a discussion of the evidence.

### 2. Automobiles § 37—

Evidence as to the existence of a stop sign along a street on the west side of its intersection with another, and the existence of a metal post or portion thereof on the east side, is competent to be shown in evidence under the rule that the physical facts and other circumstances and conditions existing at the time and place of the collision are for the consideration of the jury on the question of due care; but evidence that a stop sign had been erected on the metal post on the east side of the intersection, that it had been removed, etc., is irrelevant on the question of the negligence of a motorist entering the intersection from the east, in the absence of evidence that such motorist knew that a stop sign had been erected there.

### 3. Automobiles § 17—

Where a street has not been designated a through street by city ordinance but stop signs along an intersecting street have been erected by order of the city traffic engineer under authority of ordinance, but prior to the accident the stop sign on the metal post on one side of the intersection had been removed, the mere fact that the city engineer had designated the intersection one of special hazard under the ordinance does not constitute the intersecting street a servient one, and a motorist entering the intersection along the street having no stop sign is not under duty to stop before entering the intersection.

### 4. Same: Automobiles § 46— Motorist may not rely upon his belief that he is on through street when stop sign on intersecting street had been removed.

The evidence tended to show that intestate was familiar with the street upon which he was riding and knew that stop signs had been erected along the intersecting street. The evidence further tended to show that the street along which intestate was riding had not been designated a through street by ordinance, but that stop signs had been erected along

TUCKER *v.* MOOREFIELD.

the intersecting street under authority of ordinance by order of the city traffic engineer, and that the stop sign had been removed from the post along the street upon which defendants' car approached the intersection. *Held:* Whether intestate was negligent does not depend upon whether he believed and had reasonable grounds to believe that there was a stop sign erected along the intersecting street, but whether his acts constituted negligence must be determined on the basis of the actual conditions existing at the time of the accident, and therefore an instruction in regard to the rights and duties of motorists at the intersection of a through and servient street is inapplicable and must be held for prejudicial error. G.S. 20-158(a).

APPEAL by defendants from *Froneberger, J.*, September 8, 1958, Schedule B, Civil Term, of MECKLENBURG.

Civil action growing out of a collision that occurred January 21, 1957, about 4:40 p.m., at the intersection of North Smith and West Eighth Streets, in a residential district of Charlotte, N. C., resulting in the death of plaintiff's intestate, hereafter called Tucker, in personal injuries to Moorefield, Jr., hereafter called Moorefield, and in damage to the vehicles involved, to wit, (1) a Chevrolet truck operated by Tucker, and (2) a Dodge car operated by Moorefield.

As they approached the intersection, Tucker was proceeding north along Smith Street and Moorefield was proceeding west along Eighth Street. Both streets were paved. Smith Street is approximately eighteen feet, three inches wide. Eighth Street is approximately twenty-two feet, nine inches wide. The vehicles collided in the northeast portion of the intersection.

Moorefield, Sr., owned the Dodge car. His son, the operator, was then 17 years old. Admissions in defendant's pleading suffice to establish the liability of Moorefield, Sr., under the family purpose doctrine, for the actionable negligence, if any, of his son.

Additional facts, pertinent to decision on this appeal, will be stated in the opinion.

Plaintiff's action is to recover damages for the alleged wrongful death of Tucker. She alleged that the collision was caused by the negligence of Moorefield. Defendants, in their joint answer, denied negligence and pleaded contributory negligence; and, as counterclaims, they alleged that the collision was caused solely by the negligence of Tucker for which Moorefield was entitled to damages for personal injuries and Moorefield, Sr., was entitled to property damages.

Evidence was offered by plaintiff and by defendants.

Six issues were submitted. The first three, which arose on plaintiff's alleged cause of action and defendants' answer thereto, were

answered as follows: (1) negligence, "Yes," (2) contributory negligence, "No," (3) damages, "$30,000.00." The jury did not reach and answer the last three issues relating to Tucker's negligence and defendants' damages, which arose on defendants' alleged counterclaim.

Thereupon, the court adjudged that plaintiff recover of defendants, jointly and severally, the sum of $30,000.00, together with costs.

Defendants excepted and appealed, assigning errors.

*Goodman & Goodman, Carpenter & Webb and John G. Golding for plaintiff, appellee.*

*Carswell & Justice and Kennedy, Covington, Lobdell & Hickman for defendants, appellants.*

BOBBITT, J. This Court is of opinion that the evidence, when considered in the light most favorable to plaintiff, was sufficient to require submission of the case to the jury. Hence, the assignment of error directed to denial of defendants' motion for judgment of nonsuit is overruled. Since a new trial is awarded for reasons stated below, we refrain from a discussion of the evidence presently before us. *Caudle v. R.R.,* 242 N.C. 466, 88 S.E. 2d 138. Similarly, when a judgment of nonsuit is reversed, we refrain from stating the evidence. *Goldston v. Tool Co.,* 245 N.C. 226, 228, 95 S.E. 2d 455; *Pavone v. Merion,* 242 N.C. 594, 595, 89 S.E. 2d 108; *Davis v. Finance Co.,* 242 N.C. 233, 234, 87 S.E. 2d 209; *Harrison v. Kapp,* 241 N.C. 408, 409, 85 S.E. 2d 337.

Plaintiff pleaded and put in evidence certain sections of Chapter 2 of the Code of the City of Charlotte. Section 40(a) designates certain streets as *through streets* but North Smith is not so designated. Nor does it appear that North Smith was so designated by "any ordinance." Hence, Sections 40(a), 40(b) and 77 (a) do not apply.

Section 77(b), in pertinent part, provides: "The city traffic engineer is hereby authorized to determine and designate intersections where particular hazard exists *upon other than through streets* and to determine whether vehicles shall stop *at one or more entrances* to any such stop intersection, and shall erect a stop sign *at every such place where a stop is required,* . . ." (Our italics) The authority conferred by Section 77(b) relates specifically to the erection of stop signs at one or more entrances at particular intersections where no through street is involved. The city traffic engineer, a witness for plaintiff, testified: "This intersection had been found to be one at which a special hazard existed and stop signs were first erected prior

to 1954." Again: "The signs were placed on Eighth Street stopping all traffic entering Smith Street from Eighth."

G.S. 20-158(a) relates to the duty of a motorist to stop in obedience thereto whenever signs notifying drivers to do so have been erected at the entrance to designated "main traveled or through highways." North Smith Street had not been so designated. Hence, G.S. 20-158(a) does not apply.

We are advertent to decisions in other jurisdictions holding that where a street has been properly designated a boulevard, through street or arterial highway, and appropriate signs have been erected along the intersecting streets or roads, its status as a main thoroughfare is not lost merely because the sign on an intersecting street has become illegible, destroyed or otherwise removed. 60 C.J.S., Motor Vehicles § 350, p. 832; *Connors v. Dobbs* (Ohio), 66 N.E. 2d 546; 5A Am. Jur., Automobiles and Highway Traffic § 328, p. 434; *Schmit v. Jansen* (Wis.), 20 N.W. 2d 542, 162 A.L.R. 925; Annotation: 162 A.L.R. 927 *et seq.*, and supplemental decisions. However, it is noted that each decision is based upon particular statutory or ordinance provisions. Compare *Chambers v. Donaldson* (Cal.), 264 P. 2d 950, and California cases cited therein. It is noteworthy that in the cases referred to the main thoroughfare had been so designated by ordinance; and in most, but not all, the motorists had knowledge of its status.

North Smith had not been designated a through street by ordinance or otherwise. The mere fact that the city traffic engineer determined that a special hazard existed at this particular intersection did not convert North Smith or the portion thereof within this intersection into a through street. A driver on North Smith Street had no preferential rights because of the city traffic engineer's said determination. His preferential rights, if any, must be predicated upon the actual presence of a stop sign.

On January 21, 1957, a stop sign on the west side of Smith Street, facing eastbound traffic, was in place; but there was no stop sign on the east side of Smith Street. The metal post or portion thereof, which had supported a stop sign, was in place; but the sign itself was gone. Thus, no stop sign faced Moorefield as he approached the intersection. Two police officers, offered by plaintiff, testified that a stop sign had been there, but did not say when they had last seen it. A neighborhood resident, offered by defendants, testified that the stop sign had been down at least two months, and that it was found, after the collision, in the back yard of a nearby house.

Defendants excepted to the admission of testimony relating to the

stop sign on the west side of Smith Street and to the metal post or portion thereof on the east side of Smith Street. It would appear that these exceptions were waived when further testimony with reference thereto was elicited by defendants' counsel. *Price v. Gray,* 246 N.C. 162, 97 S.E. 2d 844. Be that as it may, testimony as to these physical facts was for consideration by the jury, together with evidence as to all other circumstances and conditions existing at the time and place of the collision, in relation to whether Moorefield exercised due care. "The degree of care required of a motorist is always controlled by and depends upon the place, circumstances, conditions, and surroundings of each particular case." 5 Am. Jur., Automobiles and Highway Traffic § 201.

These factual circumstances are noted: (1) The evidence tends to show that Moorefield had not been on Eighth Street before, that he was not familiar with the intersection; and that, as he approached Smith Street, he was looking for a street marker to ascertain whether he was approaching Cedar Street. (2) The evidence tends to show that Tucker, a route salesman, had traveled on North Smith Street two or three times a week for several years.

While evidence as to their presence was admissible, as indicated above, no legal duty to stop was imposed on Moorefield by the sign (facing eastbound traffic) on the west side of Smith Street, or by the metal post or portion thereof on the east side of Smith Street.

What legal significance, if any, did the fact that there *had been* a stop sign on the east side of Smith Street at this intersection, erected pursuant to the provisions of Section 77(b), have upon the relative rights and duties of Moorefield and Tucker? This is the crucial question.

In our view, the fact that there *had been* a stop sign on the east side of Smith Street, erected pursuant to the provisions of Section 77(b), imposed no legal duty on Moorefield. Indeed, absent evidence that Moorefield had knowledge or notice that such stop sign *had been* there, evidence as to such fact, and as to why and when the sign had been removed, was irrelevant; for Moorefield's negligence, if any, must be determined on the basis of conditions as they existed on the occasion of the collision.

Plaintiff contends that, in any event, the fact that a stop sign *had been* there was relevant as to whether Tucker was negligent. Her contentions are (1) that it may be fairly inferred that Tucker knew the stop sign *had been* there and (2) that it was for the jury to determine, with the burden of proof on defendants, whether it

should be inferred that Tucker had knowledge or notice that the sign had been removed prior to January 21, 1957.

We do not think Tucker's legal duty depends upon whether he believed, and had reasonable grounds to believe, that there was a stop sign on the east side of Smith Street facing westbound traffic on Eighth. Tucker's negligence, if any, as well as the negligence of Moorefield, if any, must be determined on the basis of the actual conditions existing when they approached the intersection; and if, in fact, there was no stop sign on the east side of Smith Street on January 21, 1957, Tucker was not legally entitled to act *as if* it were there.

In instructing the jury, the court read G.S. 20-158(a); then charged the jury that the evidence tended to show "that Smith Street where it intersects with 8th Street, has been by a city ordinance, or the evidence tends to show that Smith Street was called a dominant or main highway, whereas 8th Street was intersecting at the place in question, is what we refer to as a servient street"; and thereafter charged the jury as to the relative rights of motorists on dominant (through) highways and on servient (stop sign) highways. Defendants excepted to these and other instructions of like import. Defendants also excepted to the court's refusal to give instructions requested by defendants setting forth the law substantially as stated herein.

It seems appropriate to say that the crucial question was one of first impression in this jurisdiction and that, except for the error relating thereto, the trial was well conducted. However, having resolved the crucial question as indicated, the error with reference thereto materially prejudiced defendants and entitles them to a new trial.

New trial.