280 F.2d 544
 Leslie GILLILAND, Administrator of the estate of Leslie Gilliland, Jr., deceased, Appellant,
v.
M. T. RUKE, trading and doing business as Ruke's Produce Transport, and Roy Everett Shahan, Appellees.
 No. 8051.
 United States Court of Appeals Fourth Circuit.
 Argued April 25, 1960.
 Decided June 28, 1960.
 
 W. D. Sabiston, Jr., Carthage, N. C. (Boyette & Brogden, Carthage, N. C., on brief), for appellant.
 Fred W. Bynum, Jr., Rockingham, N. C. (Bynum & Bynum, Rockingham, N. C., on brief), for appellees.
 Before HAMLEY*, HAYNSWORTH and BOREMAN, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 A collision between an automobile and a tractor-trailer at a highway intersection gave rise to this wrongful death action. The complaint was filed by the administrator of the estate of Leslie Gilliland, Jr., the driver of the automobile. Roy Everett Shahan, operator of the tractor-trailer, and M. T. Ruke, owner of those vehicles, were named defendants. Jurisdiction of the district court was properly asserted under 28 U.S.C.A. § 1332 relating to diversity of citizenship.
 
 
 2
 Defendants joined in an answer consisting of a general denial and certain affirmative defenses. Defendant Ruke also cross-complained for damages. The cause was tried to a jury which returned special verdicts finding that Shahan had been negligent and Gilliland had been contributorily negligent. Consistent with these verdicts, a judgment was entered dismissing the action both as to the complaint and the cross-complaint.
 
 
 3
 Plaintiff appeals, presenting two questions for our determination. The first of these is whether the trial court erred in permitting Shahan to testify over objection that in his opinion Gilliland "was speeding 70 miles an hour" immediately prior to the collision. The objection to the question which elicited this testimony, renewed on this appeal, is that Shahan had no reasonable time or opportunity to judge the speed of the Gilliland automobile.
 
 
 4
 The facts necessary to be considered in deciding this question may be briefly stated. The collision occurred about 12:20 a. m. on December 2, 1956, at the intersection of North Carolina highways Nos. 54 and 55. No. 55 runs generally north and south along the crest of a hill. No. 54 runs generally east and west and intersects No. 55 at right angles. There is both an incline and a slight curve on No. 54 just east of the intersection. Gilliland was driving west on No. 54 in a 1951 model Chrysler. Shahan was driving north on No. 55 in the tractor-trailer.
 
 
 5
 Shahan testified that as he approached the intersection he slowed to a speed of from twenty-five to thirty miles an hour. He looked to both his right and left but saw no vehicle on No. 54, his range of visibility being about three hundred feet in each direction. Without stopping, Shahan entered the intersection at the indicated speed. Glancing to his right as the cab of the trailer reached the north edge of the intersection he saw the lights of an approaching automobile. The lights appeared to be about one hundred to one hundred fifty feet away. The witness testified without objection that this automobile was traveling at a high rate of speed.
 
 
 6
 Shahan shifted gears to accelerate the speed of the tractor but a collision could not then be avoided. A second or two after Shahan had seen the lights of Gilliland's car the latter collided with the right side of the trailer in the northeast quadrant of the intersection. Shahan immediately got out of his cab and observed the nature of the collision and the resulting damage.
 
 
 7
 It was on the basis of this testimony as to his knowledge of the circumstances surrounding the accident that Shahan was permitted to express an opinion as to the speed of Gilliland's car in miles per hour.
 
 
 8
 The governing rule of evidence, as stated in State v. Becker, 241 N.C. 321, 85 S.E.2d 327, 331, is as follows:
 
 
 9
 "* * * `where a witness has had no reasonable opportunity to judge the speed of an automobile, it is error to permit him to testify in regard thereto.' * * *"
 
 
 10
 Applying that rule, it was held in Becker that where a witness testified that she first saw a car when it was fifteen feet away and that it stopped after traveling twenty-five feet farther she had no reasonable opportunity to judge the speed of the car. Her expressed opinion that the car was traveling fifty-five miles an hour was therefore held to be without probative value.
 
 
 11
 Similarly, in Fleming v. Twiggs, 244 N.C. 666, 94 S.E.2d 821, applying the same rule, it was held that where a witness first saw a car from seven to nine feet from the point of impact her testimony that the car was traveling seventy miles an hour would be disregarded. In Davidson v. Beacon Hill Taxi Service, 278 Mass. 540, 180 N.E. 503, referred to in State v. Becker, supra, it was held that a witness' estimate of the speed of a car was of no value where he saw the car for the first time only fifteen feet away.
 
 
 12
 In our case, on the other hand, Shahan testified that he saw the lights of the Gilliland car when the latter was from one hundred to one hundred fifty feet away. In addition, Shahan had as a basis for estimating speed the knowledge that no car had been in sight for a distance of three hundred feet when he entered the intersection. He also had firsthand knowledge concerning the nature and force of the impact.
 
 
 13
 Under these circumstances the trial court did not err in holding that Shahan had a reasonable opportunity to judge the speed of the Gilliland automobile. The evidence complained of was therefore admissible, its weight and credibility being for the jury. See Darroch v. Johnson, 250 N.C. 307, 108 S.E.2d 589, 594. The trial court so instructed the jury.
 
 
 14
 The remaining question concerns the giving of one instruction and the refusal to give another, both dealing with the relative rights and duties of the two drivers at this intersection. The problem which faced the trial court in deciding how to instruct the jury on this matter arose from the fact that the stop sign which normally would have confronted Shahan as he approached this intersection from the south was not in place at the time of the accident.
 
 
 15
 The instruction which was given advised the jury that the right of way rules which govern uncontrolled intersections applied with regard to the intersection in question at the time of the accident.[1] The instruction which was refused would have advised the jury that No. 55 on which Shahan was traveling was servient to No. 54 at the time and place in question, and that Shahan was therefore required by law to stop before entering the intersection.[2]
 
 
 16
 The facts to be considered in deciding whether the trial court reached the right solution are as follows: Some three years or more prior to the time of the collision the State Highway Commission of North Carolina had erected stop signs at this intersection facing north and south traffic proceeding along No. 55. The purpose in erecting these signs was to designate No. 54 as a main traveled or through highway within the meaning of General Statutes of North Carolina § 20-158(a).[3]
 
 
 17
 The commission had also erected the following signs along No. 55 immediately south of the intersection and facing traffic proceeding north on that highway: Six hundred feet south of the intersection a sign reading "Stop Ahead," five hundred feet south of the intersection a sign indicating a crossroads intersection, three hundred feet south of the intersection a sign indicating a junction with No. 54, and approximately one hundred forty feet south of the intersection a sign indicating destinations east and west on No. 54. On the north side of the intersection there was a stop sign facing southbound traffic on No. 55.
 
 
 18
 All of the signs which had been erected by the commission, as described above, were standing and visible to motorists at the time of the accident except for the stop sign facing motorists approaching No. 54 from the south. That stop sign had been knocked down about four hours prior to the collision and was not visible to motorists driving north on No. 55.
 
 
 19
 Shahan, driving the tractor-trailer, had never been on No. 55 and was not previously aware that No. 54 had been designated as a main traveled or through highway. As he approached the intersection, however, he passed all of the signs along No. 55 south of the intersection which have been described, except the stop sign facing south which was not then in place.
 
 
 20
 In holding that under these circumstances Shahan had no statutory duty to stop, the trial court relied upon Tucker v. Moorefield, 250 N.C. 340, 108 S.E.2d 637, 639. In that case a stop sign which had been erected on the east side of North Smith Street in the city of Charlotte, North Carolina, at the point where that street intersects West Eighth Street was not in place at the time of the accident. The North Carolina Supreme Court held that evidence to the effect that a stop sign had been erected at this point should not have been admitted, and it was error to instruct the jury that at this intersection North Smith Street was servient to West Eighth.
 
 
 21
 As appellant points out, the Tucker case is not strictly in point. The stop sign which was there in question had been erected by the city engineer pursuant to a city ordinance authorizing this to be done "where particular hazard exists upon other than through streets." The court therefore pointed out that G. S. § 20-158(a), which is the statute here in question, and which has to do with the designation of "main traveled or through highways," was not applicable. The court in Tucker was accordingly not called upon to decide what the rule would have been if the stop sign had been erected pursuant to section 20-158(a).
 
 
 22
 It is nevertheless true that Tucker contains rationale which points in the direction taken by the trial court here. Note was taken of the decisions in other jurisdictions which have held that a through street or arterial highway does not lose its status as such because a stop sign has become illegible, destroyed or otherwise removed. But the court observed that in each such case the main thoroughfare had been so designated by ordinance; that in most, but not all, the motorists had knowledge of its status; and that each such case was based upon a "particular" statutory or ordinance provision.
 
 
 23
 Applying those criteria here,[4] we conclude that the trial court correctly determined that Shahan was not under a statutory duty to stop. While No. 54 had been designated a main traveled or through highway, this was not by virtue of any statute of which Shahan might have had at least constructive notice. Such designation was effectuated only by the posting of stop signs. The designation would therefore seem to be withdrawn, in so far as innocent members of the public are concerned, when the sign effectuating the designation is no longer in place. Under the evidence Shahan had no knowledge that No. 54 had been designated as a main traveled or through highway, or that a stop sign had ever been posted at this point.
 
 
 24
 Turning to the particular statute here in question (§ 20-158(a)), the provision thereof which places a duty upon drivers to stop reads as follows: "* * * whenever any such signs [stop signs] have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto * * *."
 
 
 25
 The quoted language indicates that the duty to stop does not derive from the fact that a stop sign may have been erected by the proper authorities at some time in the past. Rather, it depends upon the presence of such a sign at the time the driver approaches the intersection. He is commanded to stop "in obedience" to the stop sign. If no such sign is in sight and the driver is not aware that there should be one, there is nothing to obey and hence no statutory duty to stop.
 
 
 26
 Appellant draws attention to the fact that although the stop sign was missing. Shahan was confronted with a whole row of other signs south of the intersection, as described earlier in this opinion.
 
 
 27
 The only one of these other signs which provided any notice that a stop would be required was the sign six hundred feet south of the intersection reading "Stop Ahead." This was a cautionary sign which warned drivers to prepare to stop. It was not, however, the kind of a sign described in section 20-158(a) to which approaching drivers are required to render obedience by coming to a stop. The stop signs referred to in that statute are signs erected "at the entrance" to the main traveled or through highway. A sign six hundred feet away from an intersection cannot reasonably be said to be at the "entrance" thereto.[5]
 
 
 28
 Evidence pertaining to the "Stop Ahead" sign and all of the other signs which have been described was relevant on the question of Shahan's negligence, and was properly admitted for that purpose. It did not in our opinion establish that Shahan was under the statutory duty to stop which is prescribed in section 20-158(a).
 
 
 29
 We find it unnecessary to discuss appellee's contention that since the jury by special verdict found that Gilliland had been contributorily negligent, the giving and withholding of the instructions in question could not have been prejudicial.
 
 
 30
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation of the Chief Justice
 
 
 [1]
 The instruction which was given over objection reads as follows:
 "Since all the evidence in this case, including the stipulations of the parties, tend to show that the only stop sign facing the operator of the defendants' tractor-trailer as he proceeded north along highway 55 had been knocked down or was moved prior to the accident in question, the Court instructs you that the question of who had the right-of-way must be determined on the basis of conditions as they existed at that time and by applying to the evidence the rules of conduct established by law governing motorists approaching or entering an uncontrolled intersection, which law is, as the Court has just stated, that when two vehicles approach or enter an intersection at approximately the same time it is the duty of the vehicle on the left to yield the right-of-way to the vehicle on the right."
 
 
 [2]
 The instruction offered by appellant and refused by the court reads as follows:
 "That under the stipulations of the parties and the exhibits of both parties referred to in the stipulations, I charge you as a matter of law that N. C. highway 54 was the dominant or main travel or through highway and N. C. No. 55 was a subservient highway and that traffic traveling north or south on N. C. 55 at the time of the collision was required by law to stop before entering and crossing the intersection."
 
 
 [3]
 In 1956, when this cause of action arose, G.S. § 20-158(a) read as follows:
 "(a) The State Highway and Public Works Commission, with reference to State highways, and local authorities, with reference to highways under their jurisdiction, are hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto and yield the right-of-way to vehicles operating on the designated main traveled or through highway and approaching said intersection. No failure so to stop, however, shall be considered contributory negligence per se in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff in such action was guilty of contributory negligence."
 
 
 [4]
 This being a diversity action, our duty is to determine how the courts of North Carolina would construe § 20-158(a). Rules of Decision Act, 28 U.S.C.A. § 1652; Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079. We are of the view that an examination of criteria suggested in Tucker offers more assurance of accomplishing this than would a detailed analysis of decisions from other jurisdictions
 
 
 [5]
 No duty to stop was imposed by the presence of the stop sign on the north side of No. 54 facing southbound traffic on No. 55. See Tucker v. Moorefield, supra, 108 S.E.2d 640