[No. 26187.   Department Two.   September 8, 1936.]

V. O. LYLE, *as Administrator, et al., Respondents,* v.
N. FIORITO *et al., Defendants,* KING
COUNTY, *Appellant.*[1]

*Warren G. Magnuson* and *Patrick M. Tammany,* for
appellant.

*Eggerman & Rosling* and *Ray L. Johnson,* for respondent Lyle.

*Chadwick, Chadwick & Mills,* for respondents Shaffer
*et al.*

[1] Reported in 60 P. (2d) 709.

BEALS, J.—Fifteenth avenue northeast is a paved arterial highway, running north through King county from the Seattle city limits. It is crossed at right angles by east One Hundred Forty-fifth street, a non-arterial road, which, prior to 1934, was unpaved.

During the summer of 1934, N. Fiorito entered into a contract with King county for the pavement of One Hundred Forty-fifth street from Fifteenth avenue eastward. In the course of paving the street, the contractor took down an arterial stop sign, which had been placed on One Hundred Forty-fifth street just east of the northeast corner of its intersection with Fifteenth avenue, and also an arterial warning sign which had been placed three hundred feet east of the intersection. A barricade was placed, blocking One Hundred Forty-fifth street, and the paving proceeded. The paving work was completed August 14th, and after the pavement had stood two weeks, the barricade was removed, and One Hundred Forty-fifth street opened for traffic.

The three hundred foot warning sign was never replaced. The stop sign was replaced at or about the time the street was opened for traffic, but the sign soon fell down, and after some date early in September was not in position.

At about eight-thirty o'clock on the evening of September 16th, plaintiff, V. O. Lyle, with his wife, was driving north on Fifteenth avenue, approaching the intersection with One Hundred Forty-fifth street. There were no houses in the immediate vicinity, and no street light at the intersection. All four corners were obstructed, a bank bearing trees and shrubs standing at the southeast corner seriously interfering with the view.

At the same time, Frank W. Shaffer was driving west on One Hundred Forty-fifth street, Mrs. Shaffer

and their young daughter Margaret sitting with him on the front seat, their daughter Jane and Yvonne Ledwidge, a young friend of the children, sitting in the rear seat. The headlights of both cars were shining, and the evening was clear and dry. The cars entered the intersection practically simultaneously, each moving at about twenty-five miles per hour. The Lyle car struck the Shaffer car at about its front left door. The impact was terriffic. Mrs. Lyle was killed almost instantly. Mr. Shaffer died the next morning without regaining consciousness. The other occupants of the cars were all injured, some severely.

The following actions were instituted, all against King county and N. Fiorito and wife: (1) By V. O. Lyle, personally, to recover damages for injuries suffered by himself, and, as executor of his wife's will, to recover damages for her death; (2) by Agnes Shaffer, as executrix, to recover for the death of her husband, and for pain suffered by him prior to his death; (3) by Agnes Shaffer for her own injuries; (4) by Agnes Shaffer for expenses incurred in caring for her injured daughter Jane; (5) by Jane Shaffer, by her guardian *ad litem,* for injuries suffered by her; (6) by Margaret Shaffer, by her guardian *ad litem,* for her injuries; (7) by Yvonne Ledwidge, by her guardian *ad litem,* for personal injuries; (8) by John P. Ledwidge, to recover for expenses incurred in caring for Yvonne.

The cases were consolidated for trial (*State ex rel. Shaffer v. Superior Court,* 184 Wash. 316, 50 P. (2d) 917), and a jury trial resulted in verdicts for the several plaintiffs against defendant King county only. A new trial having been denied, judgments upon the verdicts were entered, from which King county has appealed. There is only one record before this court, but separate appeals are argued; one from the judg-

ment in favor of Mr. Lyle, the other from the judgments entered in the Shaffer-Ledwidge cases. The cases will be discussed together.

Error is assigned upon the denial of appellant's motion for a nonsuit at the close of respondents' evidence; upon the refusal to grant appellant's motion for directed verdicts; upon the giving of certain instructions; upon the withdrawal of one instruction after the same was given; upon the refusal to give certain requested instructions; upon the denial of appellant's motion for a new trial, and upon the entry of judgment in favor of respondents.

Appellant has filed the same brief on each appeal, contending, first, that from the record it should be held that respondents, as matter of law, are not entitled to recover; and second, that no duty rests upon appellant county to maintain stop and warning signs on roads which intersect legally established arterial highways.

■ It is admitted that Fifteenth avenue northeast had been regularly established as an arterial highway, in accordance with the provisions of Rem. Rev. Stat., § 6362-40 [P. C. § 196-40]. It is also admitted that the intersection here in question was an obstructed view intersection, within the purview of Rem. Rev. Stat., § 6362-3(2) [P. C. § 196-3].

The trial court instructed the jury that, as the county had established Fifteenth avenue as an arterial highway, it was the duty of the county to maintain stop and warning signs on One Hundred Forty-fifth street at and near its intersection with Fifteenth avenue. The court also instructed the jury that Mr. Shaffer had the right to assume that the county had performed its duty and had posted warning and stop signs giving notice of the presence of an intersection with an arterial highway, and also instructed the jury

that Mr. Lyle had the right to assume that such signs were placed upon intersecting streets, and that in obedience thereto no traffic would be projected into the arterial highway.

Appellant requested the court to instruct the jury

". . . that under the law there is no duty imposed upon the defendant King county or its agents to maintain stop or warning signs upon roads or highways at or near the place where the same intersect regularly established arterial highways,"

which instruction the trial court refused to give.

The following statutory provisions are pertinent to this inquiry:

"The operator of any motor vehicle entering upon an arterial main traveled highway, from a public or private highway, road, street, way or driveway, shall yield the right of way to vehicles on such arterial highway and shall come to a full stop thereat when and where signs, posts or other markers so direct or indicate. . . . All state highways shall be considered arterial main traveled highways." Rem. Rev. Stat., § 6362-40 [P. C. § 196-40]. .

"Whenever any county or township road intersects any heavily traveled state highway or heavily traveled county road, it shall be the duty of all persons driving or operating any vehicle on the intersecting county or township road to bring such vehicle to a complete stop at the point of intersection. The boards of county commissioners of the respective counties shall determine the particular county or township roads of their counties upon which stops shall be made in accordance with the provisions of this act; and upon such determination the said boards shall cause to be posted and maintained on such intersecting county or township road, at a point actually or approximately three hundred feet distant from such heavily traveled state highway or county road, a printed or painted notice, which shall be plainly visible from such intersecting road, to the effect that such heavily traveled state highway or county road is three hundred feet distant; and shall

also cause to be posted and maintained on said intersecting county or township road at the point of intersection, a sign, plainly visible from said intersecting county or township road, upon which shall be printed or painted the word 'Stop.' All such signs shall be uniform as adopted by the state highway department." Rem. Rev. Stat., § 6362-41a [P. C. § 196-58].

"Caution signs or signals shall be placed where practicable on all public highways at such points and in such manner as to advise the traveler of the proximity of a state highway, arterial street, or other dangerous or unusual conditions." Rem. Rev. Stat., § 6308-3 [P. C. § 2691-3].

Both of the sections first quoted were enacted in 1927, and were contained in independent acts, which were approved by the governor on the same day. The two sections, then, are *in pari materia,* and must be construed together. Appellant argues that the first section quoted establishes a comprehensive state-wide highway plan, to the end that the general public shall take notice of the existence of highways which have been designated as arterial, and operate their motor cars accordingly. Appellant then argues that the legislature intended to require of the driver approaching an arterial highway, first, that he yield the right of way at all times, and second, that he come to a full stop when and where signs so direct.

In support of its contention that no duty rests upon the county to erect warning signs, appellant cites the case of *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, in which it appeared that no warning signs were in place, the accident which was the basis of the litigation having been occasioned by an automobile driving into an arterial, and colliding with an approaching stage. The action was brought by a passenger in the automobile, and we held that the driver was clearly guilty of negligence, which, how-

ever, should not be imputed to the plaintiff. The case involved rather an obstructed intersection than an arterial question. As we said in the case of *Byrne v. Stanford,* 159 Wash. 271, 292 Pac. 1014, referring to the *Rosenstrom* case,

"What is said in the opinion in that case by way of argument must be read in the light of the particular facts then before the court."

The case relied on by counsel does not support its position on the phase of the case now under discussion.

As under the statute quoted all state highways are arterial highways, and as an arterial highway is also a "heavily traveled highway," the first two sections above quoted manifestly tie in together, even though contained in different statutory enactments.

The county commissioners of King county, by resolution No. 4434, declared certain county roads, including Fifteenth avenue northeast, arterial highways, the pertinent portion of the resolution reading as follows:

"Whereas it is in the best and safest interest of the travelling public to have certain heavily traveled streets and avenues, and highways designated as arterial ways, therefore:

"BE IT RESOLVED That the following described highways be recorded according to law as arterial ways, and that the proper traffic signs or signals be installed.

"15th Ave. N. E. Commencing at the north margin of E. 110th St., thence North on 15th Ave. N. E. to Ballinger Way."

Pursuant to this resolution, arterial stop and warning signs were placed on roads intersecting Fifteenth avenue, including One Hundred Forty-fifth street. The county engineer testified that it was one of the duties of the county maintenance department to place such signs, and another county employee testified that it was his duty, as agent of the county, to see that such

signs were replaced in position after the completion of a paving job.

The constant purpose of laws and rules regulating the use of roads is to prevent accidents and to expedite traffic, in so far as speed is consistent with safety. Manifestly, the mere designation of a road as an arterial highway, as such action is placed of record in a state or county office, is not notice in fact to the traveling public. Warning signs have of recent years become very numerous, and are properly and necessarily relied upon to give notice of physical facts which a driver should know. In the case of *Barber v. Seattle*, 182 Wash. 672, 48 P. (2d) 234, we said:

"Even though the city might have been under no duty to install a wig-wag system, yet, having installed it and taught the public to rely upon it, the failure to operate it in a particular instance would create a trap and constitute negligence."

See, also, *Beach v. Seattle*, 85 Wash. 379, 148 Pac. 39; *Ray v. Hines*, 118 Wash. 530, 203 Pac. 929; *Gray v. King County*, 140 Wash. 169, 248 Pac. 397.

Under the law, traffic approaching an arterial from an intersecting street must yield the right of way, regardless of the general rule. This exception to the law giving the driver on the right the preference becomes an absolute menace unless drivers approaching an arterial are warned of that fact. This is demonstrated by the facts in the case at bar. If Fifteenth avenue had not been an arterial, Mr. Shaffer's car would have had the right of way over that driven by Mr. Lyle, and Mr. Shaffer would have been primarily concerned with traffic approaching from his right, rather than with traffic approaching from his left. This situation was entirely changed by the fact that Fifteenth avenue was an arterial highway. Mr. Shaffer was not familiar with the physical situation, and in the absence of the

usual warning and stop signs, had no notice of the fact that he was approaching an intersecting arterial highway where he was required to yield the right of way to traffic approaching from either direction.

Considering all the pertinent statutory provisions together, we are convinced that the duty rested upon appellant county to place in position the arterial warning and stop signs, and that the court did not err in so instructing the jury. In this connection, it is proper to note that no question of the sudden destruction of such a sign is presented. Officers and agents of the county knew for days that One Hundred Forty-fifth street was open for traffic, and had ample opportunity to attend to the replacing of the warning signs. While the contract work was not formally accepted until December, the road was open for traffic, and in so far as the questions here presented are concerned, it must be held that the county had reincluded the street as a portion of its highway system.

Appellant complains of the fact that the jury returned a verdict against it, while releasing its contractor from liability. The county knew that the paved portion of the highway was open for traffic, and the duty to place and maintain the same in a safe condition for ordinary traffic rested primarily upon the county. We are not here concerned with any question of liability as between the county and its contractor. The record contains evidence which, if believed by the jury, supported a finding that the county opened the road for traffic and assumed the burden of placing or restoring warning signs which the situation required.

In view of the law which placed upon the county the obligation of maintaining the signs in proper position, we find no error in the instructions upon this branch of the case of which appellant complains.

Appellant vigorously contends that it should be

held that, as matter of law, respondents are not entitled to recover against it. Respondent Lyle testified that he had passed the intersection in question several times, once a few hours before the accident; that, just prior to the collision, he approached the intersection at from twenty-five to twenty-eight miles per hour, without slackening his speed and without seeing the Shaffer car. The intersection being an obstructed one, automobiles in crossing the same are limited to fifteen miles per hour. Appellant also argues that each driver was negligent in not observing the beam from the headlights of the other car.

Respondent Lyle was proceeding along an arterial highway, and was justified in assuming (until he knew, or should have known, the contrary) that other drivers would accord him the right of way to which he was entitled. *Church v. Shaffer,* 162 Wash. 126, 297 Pac. 1097; *Mathias v. Eichelberger,* 182 Wash. 185, 45 P. (2d) 619.

As Mr. Shaffer died of injuries received in the accident, in the absence of evidence to the contrary, it is presumed that his acts accorded with those of a reasonably prudent driver.

The county pleaded contributory negligence in each case, and this issue was submitted to the jury under proper instructions. We are convinced that it cannot be held, as matter of law, that appellant was entitled to judgment because of contributory negligence. Appellant strenuously contends that one or other of the drivers must have been negligent, and that it should not be held responsible in both cases. The jury, however, were justified in finding that the primary negligence which caused the collision was that of the county, and that if either driver was, or both drivers were, guilty of some negligence, the same did not proximately contribute to the accident.

The facts were extremely complicated. The consolidation of so many cases rendered necessary the giving of many instructions, the total reaching the number of sixty-nine. Tested by appellant's exceptions, we find in these instructions no reversible error. Neither can it be held that the trial court erred in refusing instructions requested by appellant, or in withdrawing an instruction inadvertently given.

Finding no error in the record, the judgments appealed from are affirmed.

MILLARD, C. J., MAIN, BLAKE, and HOLCOMB, JJ., concur.