JOE HALFORD KELLY v. MELVIN WASHINGTON ASHBURN.

(Filed 2 February, 1962.)

1. **Automobiles § 17—**

   Under G.S. 20-158(a) the erection of stop signs on an intersecting highway or street is a method of giving the public notice that traffic on one is favored over the other and that a motorist facing a stop sign must yield the right of way.

2. **Same—**

   Where a stop sign has been erected at a street or highway intersection,

there is a rebuttable presumption of fact that such sign had been erected purusant to lawful authority.

**3. Same—**

The right of a motorist to rely upon the assumption that traffic approaching along an intersecting street will yield the right of way when he knows that a stop sign had been erected upon the intersecting street is not lost because such sign had been removed prior to the accident when such motorist has neither actual nor constructive notice that the sign had been removed, and when the evidence is sufficient to present this question, an instruction predicating his rights solely upon the law governing the right of way at an intersection at which no stop sign had been erected, is error.

**4. Same—**

Where a motorist who is unfamiliar with an intersection approaches it along a street upon which a stop sign had been erected but had been removed, his rights in entering the intersection must be judged by the rule of care of an ordinarily prudent man under the circumstances confronting him, unaffected by the fact that a stop sign had been erected upon the street upon which he was traveling.

BOBBITT, J., dissenting.

APPEAL by plaintiff from *Craven, S.J.,* May 1961 Term, LEE Superior Court.

Civil action instituted by Joe Halford Kelly to recover $900.00 damages to his 1957 Mercury automobile alleged to have been caused by the actionable negligence of the defendant, Melvin Washington Ashburn. The defendant denied negligence, filed a counterclaim against the plaintiff for $350.00 damages to his 1954 Ford and $2,500.00 for his personal injury.

The accident occurred about eight o'clock on the morning of February 27, 1957, at the intersection of Woodland Avenue and Hughes Street within the corporate limits of Sanford. Woodland is the north-south street, paved by the State several years ago. Hughes is the east-west street, constructed by the city two years before the accident. It intersects Woodland at right angles. The collision occurred in the northeast quadrant of the intersection as the plaintiff was driving north on Woodland and the defendant was driving west on Hughes.

The plaintiff testified in substance: He was familiar with the intersection. After the completion of Hughes Street, stop signs were erected at its east and west entrances into Woodland. He knew these signs had been at the intersection for the previous two years. At the time of the accident, however, he had no notice the stop sign at the eastern approach on Hughes was down. Immediately after the accident he discovered for the first time the sign was not in place. As he approached

the intersection he reduced speed to about 20 miles, applied his brakes when he saw the defendant "was not going to stop." The front of plaintiff's Mercury struck the left side of defendant's Ford. The Mercury stopped at the point of impact. The Ford crossed the street to the curb on the northwest corner of the intersection. There was evidence of the amount of damages to both vehicles and the extent of the defendant's personal injury.

The defendant testified in substance he was not familiar with the intersection, did not know stop signs were erected thereon. He approached the intersection from the east, stopped, saw the plaintiff to his left on Woodland, thought he had time to cross but was hit before he completed his intended movement through the intersection. "I don't know who entered the intersection first. I thought I could make it all right." On cross-examination, he testified: "I knew I was supposed to stop there. Certainly I stopped."

The court charged the jury:

> "I charge you that all of the evidence in this case, both plaintiff's and defendant's all of the evidence tends to show that there wasn't any stop sign located on that northeast corner of Woodland and Hughes; that is to say, there wasn't any stop sign facing Mr. Ashburn as he drove along Hughes Street. And I charge you that under the statutory law of North Carolina that, if you find that there wasn't any stop sign there, as all the evidence tends to show, that Ashburn would have been approaching that intersection with Kelly on his left, and Kelly was approaching with Ashburn on his right — and under the law of North Carolina, under those facts and circumstances Ashburn had the right of way. And I charge you peremptorily that if you find that there wasn't a stop sign there and that these motor vehicles approached this intersection, the two of them, at approximately the same time, which I shall define to you in a moment, — and if Kelly failed to yield the right of way to Ashburn, he would have been guilty of negligence under our law."

The jury found the defendant was negligent and the plaintiff was contributorily negligent. From the judgment on the verdict, the plaintiff appealed.

*Bailey and Dixon, by Wright T. Dixon, Jr., for plaintiff appellant.*
*Gavin, Jackson & Williams, by E. L. Gavin for defendant appellee.*

HIGGINS, J. The State law, G. S. 20-158(a), provides: "The State Highway Commission, with reference to State Highways, and local

authorities, with reference to highways under their jurisdiction, are hereby authorized to designate main traveled or through highways *by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to full stop before entering or crossing such designated highway. . . .*" (emphasis added)

By the terms of the statute the erection of stop signs on an intersecting highway or street is a method of giving the public notice that traffic on one is favored over the other and that a motorist facing a stop sign must yield. Stop signs at intersections are in such general use and their function so well known that a motorist, in the absence of notice to the contrary, may presume they were erected by lawful authority. *Jackson v. McCoury,* 247 N.C. 502, 101 S.E. 2d 377; *Smith v. Buie,* 243 N.C. 209, 90 S.E. 2d 514; *Johnson v. Bell,* 234 N.C. 522, 67 S.E. 2d 658. The presumption is one of fact and, like other presumptions of fact, is rebuttable.

In this case the evidence permits the inference the plaintiff knew Woodland was surfaced by the State through the City of Sanford. Hughes was built by the city as an intersecting street on which stop signs were erected. The plaintiff testified he knew of these signs and relied on them as giving him the right of way. At the time of the accident, and unknown to him, the sign on the eastern approach was not in place. It was, however, restored after the accident.

This evidence is sufficient to present the question whether as to the intersection on the occasion of the accident the plaintiff had the right to assume that traffic from the east on Hughes would yield. Plaintiff's conduct is to be judged by the rule of the prudent man; that is, by that which a man of ordinary prudence would do under the same or similar circumstances when charged with like duty. These questions arise on the issue of negligence.

If the jury should find the stop signs were erected on Hughes Street by proper authority and the plaintiff had neither actual nor constructive notice the one on the eastern approach was not in place, its absence would not take away his right to treat Woodland as the preferred street. "A motorist proceeding along a favored highway is entitled to assume that traffic on an intersecting secondary highway will yield him the right of way, and the effect of his right to rely on this assumption is not lost because warning signs have been misplaced or removed, . . .." 162 A.L.R. 927; 58 A.L.R. 1197; 81 A.L.R. 185; 60 C.J.S., Motor Vehicles, § 350, p. 832; *Bell v Crook,* 168 Neb. 685, 97 N.W. 2d 352; *Schmit v. Jansen,* 247 Wis. 648, 20 N.W. 2d 542; *Lyle v. Fiorito,* 187 Wash. 537, 60 P. 2d 709; *Jones v. McCullough,* 148 Kan. 561, 83 P. 2d 669; *Titus v. Braidfoot,* 226 Ala. 21, 145 So. 423; *Welch v. Canton City Lines,* 142 O.St. 166; *King v. Gold,* 224 Iowa 890; *Austinson v. Kil-*

*patrick,* 105 N.W. 2d 258 (N.D. 1960) ; *Seyfer v. Gateway Baking Co.,* 159 Fed. Sup. 177.

What is said here relates to the plaintiff's rights, duties, and liabilities in traversing the intersection. The defendant was not familiar with the intersection. He was on the plaintiff's right and was not confronted by stop sign notice that Woodland was the preferred street. His conduct likewise must be judged by the rule of the prudent man, by that which a man of ordinary prudence would do under the same or similar circumstances, when charged with like duty. Each party's responsibility is to be judged in the light of conditions confronting him.

The rule with respect to the rights of motorists to rely on stop signs is stated in Blashfield 2, Perm. Ed., Cyclopedia of Automobile Law and Practice, § 998, p. 242:

> "That the usual marker or sign erected to inform travelers of the superior character of an intersecting road is temporarily removed or destroyed does not change the character of the road nor affect the usual incidents appropriate to such road, such as its conferring the right of way upon traffic flowing along it as against that on intersecting roads, although in a case where a motorist, approaching an arterial highway from the right, did not see the stop sign because the edge had been turned toward him, it was held that a person proceeding in the exercise of ordinary care cannot be held negligent in failing to stop at an intersection with an arterial highway with which he is not familiar and which is not properly marked with a lawful stop sign.
>
> "Conversely, where signs or markers have been posted by the proper authorities to the effect that a particular road is of superior classification, it will be regarded as being such so far as concerns the question of right of way, even though not legally established as a road within that particular classification. A driver has the right to assume, unless he knew otherwise, that a sign has been erected by the proper authority."

After all, responsibility for an accident must be determined upon the basis of the particular facts of each case. One party, or both, or neither, may have acted in accordance with the rule of the prudent man. Consequently, a collision at an intersection where a stop sign has been erected and then removed or defaced may result from the negligence of one party, or both, or neither. The court's charge in this case was a peremptory instruction to find the plaintiff was negligent by reason of his failure to yield to the defendant on his right.

The court's charge was an amplification of what this Court said in *Tucker v. Moorefield,* 250 N.C. 340, 108 S.E. 2d 637. The rule herein stated is recognized in that case; however, decision was based upon the premise the evidence affirmatively showed the sign to have been erected by the city engineer on account of a special hazard and not by either the State Highway Commission or the local authorities (the governing board of the city) as specified in G.S. 20-158(a), leaving G.S. 20-155(a) applicable. In *Tucker v. Moorefield,* the Court said: "The mere fact that the city traffic engineer determined that a special hazard existed at this particular intersection did not convert North Smith Street or the portion thereof within the intersection into a through street. A driver on North Smith Street had no preferential rights because of the city traffic engineer's said determination."

In the case before us the evidence was sufficient to present the question whether the plaintiff, under the circumstances that confronted him, was warranted in assuming he had the right of way through the intersection. The peremptory instruction to the contrary was prejudicial error for which we order a

New trial.

BOBBITT, J., dissenting. In approaching and entering the intersection, plaintiff was driving north on Woodland and defendant was driving west on Hughes. Hence, defendant approached and entered the intersection from plaintiff's right.

It was the duty of the presiding judge to instruct the jury as to the relative rights of plaintiff and defendant in respect of right of way with reference to this intersection at the time of the collision.

G.S. 20-155(a) provides: "When two vehicles approach or enter an intersection and/or junction at approximately the same time, the driver of the vehicle on the left *shall yield the right-of-way to the vehicle on the right* except as otherwise provided in § 20-156 and except where the vehicle on the right is required to stop *by a sign erected pursuant to the provisions of § 20-158* and except where the vehicle on the right is required to yield the right-of-way by a sign erected pursuant to the provisions of § 20-158.1." (My italics) G.S. 20-156 and G.S. 20-158.1 are not pertinent to the present factual situation.

When the collision occurred, no stop sign "erected pursuant to the provisions of § 20-158," faced westbound traffic on Hughes Street. Nor was there evidence defendant knew a stop sign *had been* there.

The judge instructed the jury, if plaintiff and defendant approached and entered the intersection at approximately the same time, it was plaintiff's duty, by reason of the quoted statutory provision, to yield the right of way to the vehicle approaching from his right. Under the

evidence, this instruction, in my opinion, was in accord with our decision and opinion in *Tucker v. Moorefield,* 250 N.C. 340, 108 S.E. 2d 637.

A police officer testified that Woodland and Hughes were paved streets; that Woodland was "22 feet wide at that point"; that he did not know whether Hughes was "narrower or wider than Woodland"; that Woodland had been paved "a long time"; and that Hughes had been "recently paved." The city clerk testified: "Hughes Street from Lee Avenue up to Woodland was paved by the City and assessed. Woodland Avenue *as best I remember* was paved by the State." (My italics) Apart from the officer's testimony that Hughes had been "recently paved," I find no evidence as to when Hughes was paved. Nor do I find evidence that stop signs were erected *after* Hughes was paved.

There was evidence that stop signs *had been* erected, facing eastbound and westbound traffic on Hughes Street. When they were erected does not appear. Plaintiff testified he had observed these signs; that he had been riding up and down Woodland ever since he had been driving; that he was twenty-six years old and got his license when he was sixteen. He testified: "As to how long the sign had been there before it was taken down, it had been on the east side of Hughes Street for a couple or a number of years." (Note: I assume plaintiff intended to say there had been a stop sign on the north side of Hughes, facing westbound traffic thereon.) Again: "As I approached the intersection I thought there was a stop sign on Hughes Street."

There was no evidence as to when or by whom the stop sign that had faced westbound traffic on Hughes was removed. Nor was there evidence as to when such stop sign was last observed by plaintiff or anyone else.

During the trial, plaintiff moved for leave to amend his complaint by pleading portions of an ordinance of the City of Sanford, identified by the city clerk, referred to as follows:

"Section 6.2. This is entitled 'STOP, BEFORE ENTERING CERTAIN STREET INTERSECTIONS. Those intersections described in Schedule 10, attached hereto and made a part hereof, are hereby declared to be stop intersections when entered from the streets first named, and when stop signs are placed, erected or installed at such intersections every driver of a vehicle or street car shall stop in obedience to such sign before entering the intersection, and shall not proceed into or across the through street until he has first determined that no conflict with traffic will be involved.' "

"Section 10, entitled 'INTERSECTION AT WHICH STOP

IS REQUIRED BEFORE ENTERING' — it says 'Hughes at Woodland.' "

Plaintiff's said motion for leave to amend was denied. However, it is noted that this ordinance does not purport to designate Woodland as a boulevard, through street or arterial highway. It relates to a single intersection. It does not appear when this ordinance was adopted.

Under the rule adopted by the court for determination as to whether plaintiff was negligent in failing to yield the right of way, the burden of proof, in my opinion, is on plaintiff to establish that he believed, and had reasonable grounds to believe, that there was a stop sign facing westbound traffic on Hughes on the occasion of the collision. Absent evidence as to when plaintiff had last seen the sign and as to how long before the collision the sign had been removed, plaintiff's evidence, in my opinion, is insufficient to entitle him to the benefit of the rule adopted by the Court. In my opinion, the fact there *had been* a stop sign facing westbound traffic on Hughes and plaintiff *had seen it*, is, standing alone, insufficient to support a finding that plaintiff had reasonable grounds to believe it was there on the occasion of the collision.

In *Tucker v. Moorefield, supra,* the sign had been removed at least two months before the date of the collision; and Tucker, a route salesman, traveled North Smith Street two or three times a week.

Had plaintiff, traveling on Woodland, passed this intersection many times after the stop sign had been removed? It is noteworthy that a licensed motorist must be able to identify a standard stop sign by its octagonal shape; and, absent unusual conditions, a motorist can see whether a stop sign faces traffic approaching an intersection from his right.