WILLIE ISAIAH MOORE v. GRACE McDONALD HALES and JOHN HANES HALES.

(Filed 4 February, 1966.)

**1. Negligence § 25—**

While defendant has the burden of proof on the issue of contributory negligence, he is entitled to have the evidence bearing on that issue considered in the light most favorable to him in determining the sufficiency of the evidence to raise the issue.

**2. Automobiles § 44—**

Allegations that plaintiff, the driver of a vehicle along the dominant highway, entered the intersection with a servient highway at a high and unlawful rate of speed do not require the submission the issue of contributory negligence in the respect alleged when there is no evidence that plaintiff was traveling in excess of the speed limit, and the physical facts as to the distance traveled by plaintiff's car after the collision are explained so that there is no substantial evidence that plaintiff was exceeding the 35 mile speed restriction.

**3. Same—**

Where the physical facts are that the front of defendant's car, traveling along the servient highway, struck the right side of plaintiff's car, which approached the intersection along the dominant highway from defendant's left, *held* there is no evidence to support defendant's allegation to the effect that defendant's car first entered the intersection at a time when plaintiff's car was approaching it.

**4. Automobiles § 39—**

Evidence of the distance traveled and the damage wrought by a vehicle after a collision does not raise an inference that the vehicle was traveling at excessive speed prior to the collision when the operator of the vehicle testifies that he lost control of his vehicle upon impact and put his foot on

the gas instead of the brake, and was rendered unconscious when the vehicle thereafter struck a telephone pole, since the driver's testimony is consistent with and tends to explain the physical facts.

**5. Automobiles § 17—**

The driver along a dominant highway is not under duty to anticipate that the operator of a vehicle approaching along a servient highway will fail to stop as required by statute before entering the intersection with the dominant highway, and the driver along the dominant highway, in the absence of anything which gives or should give him notice to the contrary, is entitled to assume and act upon the assumption, even to the last moment, that the operator of the vehicle on the servient highway will stop.

**6. Automobiles § 44—**

Defendant's allegations that she came to a complete stop at the stop sign, and that, seeing no traffic approaching, she proceeded slowly into the intersection with the dominant highway, *held* to preclude defendant from asserting that plaintiff, who entered the intersection from defendant's left along the dominant highway, was negligent in entering the intersection when he should have seen defendant's car approaching at a high rate of speed and should have apprehended, in time to have avoided collision, that defendant was not going to stop, since evidence of negligence in respects not supported by allegations is ineffectual.

**7. Negligence §§ 21, 25—**

Contributory negligence is an affirmative defense which must be pleaded and proven in accordance with the allegations.

**8. Pleadings § 28—**

A party must make out his case in substantial conformity with his allegations.

APPEAL by plaintiff from *Gambill, J.,* March 29, 1965 Civil Session of GUILFORD, Greensboro Division.

Plaintiff's action is to recover damages on account of personal injuries and property damage he sustained as a result of a collision that occurred on Sunday, December 2, 1962, shortly after 10:00 a.m., within the intersection of two streets in a residential district of Greensboro, North Carolina, between a 1959 Oldsmobile owned and operated by plaintiff and a 1963 Chevrolet owned by defendant John Hanes Hales and operated by his wife, defendant Grace Mc-Donald Hales.

Benbow Road, the dominant street, runs north and south. Florida Street, the servient street, runs east and west. Stop signs erected pursuant to a Greensboro ordinance faced motorists approaching said intersection on Florida Street.

After plaintiff, driving south on Benbow, had entered the intersection, the right side of plaintiff's Oldsmobile was struck by the front of the Hales Chevrolet. Mrs. Hales, driving east on Florida,

had entered the intersection without stopping in obedience to the stop sign.

The pleadings raised issues of negligence, contributory negligence and damages.

It was stipulated that defendant John Hanes Hales is liable, under the family purpose doctrine, for the actionable negligence, if any, of his wife, defendant Grace McDonald Hales.

The only evidence was that offered by plaintiff.

The first (negligence) issue was answered, "Yes," by consent, defendants having conceded *at trial* that negligence on the part of Mrs. Hales was a proximate cause of the collision and resulting injuries and damage. The second (contributory negligence) issue, submitted over plaintiff's objection, was answered, "Yes." The jury did not reach the issue (third) as to damages.

Judgment that plaintiff recover nothing of defendants and that plaintiff pay the costs was entered. Plaintiff excepted and appealed.

*Lee & Lee and David M. Dansby, Jr., for plaintiff appellant.*
*Smith, Moore, Smith, Schell & Hunter for defendant appellees.*

Bobbitt, J. The crucial question is whether the court erred in submitting the issue as to contributory negligence.

While a defendant has the burden of proof on the issue of contributory negligence, he "is entitled to have the evidence bearing on that issue considered in the light most favorable to him in determining whether there is sufficient evidence of contributory negligence to be submitted to the jury." 3 Strong, N. C. Index, Negligence § 25, and cases cited.

The alleged factual basis underlying plaintiff's alleged specifications of defendants' negligence, including failure to keep a proper lookout and failure to exercise proper control, is that Mrs. Hales, in violation of the municipal ordinance, entered the intersection without stopping in obedience to the stop sign and did so when she saw or by the exercise of due care should have seen plaintiff's car was so close to said intersection as to constitute a serious hazard. Plaintiff did not allege Mrs. Hales was operating the Chevrolet at unlawful or excessive speed.

Plaintiff offered in evidence the following excerpt from defendants' answer: "It is further admitted that the automobile operated by Grace Hales eastwardly on Florida Street collided with the automobile driven by the plaintiff and *that she did not come to a complete stop* for the stop sign which is erected on Florida Street." (Our italics.)

It was stipulated "that Mrs. Hales entered a plea of guilty to failing to yield the right of way."

The alleged factual basis underlying defendants' alleged specifications of plaintiff's (contributory) negligence is that Mrs. Hales "did not observe any vehicular traffic . . . on Benbow . . . and did not observe any stop sign" as she approached the intersection; that "(s)he slowed before entering the intersection and, seeing nothing coming, proceeded into the intersection, when suddenly without warning," plaintiff's car approached from her left "at a high and unlawful rate of speed, and the two vehicles collided in the intersection."

Defendants alleged plaintiff was contributorily negligent in that he operated his car (a) carelessly and recklessly, (b) at a speed greater than was reasonable and prudent under existing conditions, and (c) at a speed in excess of 35 miles per hour; and that he (d) approached the intersection "while other traffic was in and entering the intersection" without reducing speed, without sounding his horn and without exercising due care, (e) failed to reduce his speed and thereby avoid a collision when he saw, or should have seen, that defendants' car "was entering the intersection," (f) failed to sound his horn or give any other warning as he approached the intersection when he saw, or should have seen, "the defendants' automobile entering the intersection," and (g) failed to keep a proper lookout and exercise due care for his own safety.

There was evidence Benbow Road is 30 feet wide and that Florida Street, "on the west side of Benbow Road", is 44 feet wide. There is no evidence as to exactly where within the intersection the collision occurred. Since all the evidence tends to show the front of the Chevrolet struck the right side of the Oldsmobile, the only reasonable inference is that the Oldsmobile was crossing the Chevrolet's line of travel when the collision occurred. Suffice to say, we find no evidence sufficient to support defendants' allegations to the effect the Chevrolet entered the intersection first and at a time when plaintiff *was approaching* the intersection.

Plaintiff testified he "was going about 25 miles an hour." A witness who observed the Oldsmobile shortly before it reached the intersection testified plaintiff "was going about 20 or 25 miles an hour." There was no other *testimony* as to the speed of the Oldsmobile as it approached and entered the intersection.

"(W)hat occurred immediately prior to and at the moment of the impact may be established by circumstantial evidence, either alone or in combination with direct evidence. (Citation.) The physical facts at the scene of an accident, the violence of the impact, and the extent of damage may be such as to support inferences of

negligence as to speed, reckless driving, control and lookout. (Citations.)" *Yates v. Chappell*, 263 N.C. 461, 465, 139 S.E. 2d 728.

There was evidence tending to show: When her daughter yelled, "There's a car coming," Mrs. Hales applied her brakes, "leaving 25 feet of skid marks." While the evidence with reference thereto is unclear, apparently the Chevrolet stopped at or near the point of collision. There was evidence the Chevrolet "came to rest headed in a southeasterly direction," and that "skid marks under the left front wheel were curved in a southeasterly direction."

There was evidence the Oldsmobile, after being struck by the Chevrolet, traveled 60 feet south on the east side of Benbow Road, then hit and knocked down a telephone pole and crossed the curb, then continued down the sidewalk approximately 220 feet and there struck and broke into pieces a large rock beside a driveway, and thereafter traveled 96 feet farther south and stopped approximately in the center of Benbow Road.

Defendants cite the destruction wrought by plaintiff's 1959 Oldsmobile four-door sedan as it traveled a total of 376 feet from the point of collision to where it stopped as evidence of excessive speed. However, the evidence with reference thereto must be considered in connection with plaintiff's testimony that he lost control of the Oldsmobile when it was knocked to its left by the Chevrolet; that he "blanked out" and "was totally knocked out" when the Oldsmobile struck the telephone pole; that he did not regain consciousness and control of the Oldsmobile until after it had struck the large rock; and that he (subsequent to the collision) "had put (his) foot on the gas instead of the brake." There was evidence Benbow Road, proceeding south, "is slightly downhill."

Plaintiff's testimony is consistent with and tends to explain the physical facts.

There is no evidence sufficient to support a finding that plaintiff was operating his car at a speed in excess of 35 miles per hour. Whether there was sufficient evidence to support a finding that plaintiff was operating his car at a speed greater than was reasonable and prudent under existing conditions and, if so, whether plaintiff's speed was a proximate cause of the collision, must be considered in relation to all conditions existing as plaintiff approached and entered the intersection.

The reciprocal rights and duties of motorists when approaching an intersection from dominant and servient highways, particularly in relation to G.S. 20-158(a), have been often stated. *Matheny v. Motor Lines*, 233 N.C. 673, 65 S.E. 2d 361; *Blalock v. Hart*, 239 N.C. 475, 80 S.E. 2d 373.

"It is established by our decisions that where a highway is designated as a main traveled or dominant highway by the erection of stop signs at the entrances thereto from intersecting servient highways, as prescribed by G.S. 20-158(a), the operator of a motor vehicle traveling upon such main traveled or dominant highway and approaching an intersecting servient highway is under no duty to anticipate that the operator of a motor vehicle approaching on an intersecting servient highway will fail to stop as required by the statute, and, in the absence of anything which gives, or in the exercise of due care should give, notice to the contrary, the driver on the dominant highway is entitled to assume and to act upon the assumption, even to the last moment, that the operator of the vehicle on the servient highway will act in obedience to the statute and stop before entering the dominant highway. *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 17; *Loving v. Whitton,* 241 N.C. 273, 84 S.E. 2d 919." Johnson, J., in *Caughron v. Walker,* 243 N.C. 153, 90 S.E. 2d 305.

The only pertinent evidence bearing upon this feature of the case is to be found in the testimony of plaintiff and of Elbert Street, the Greensboro Police Officer who investigated the collision.

Plaintiff, on direct examination, testified: "As I approached the intersection of Benbow Road and Florida Streets, I saw the car, the car to my right. When I saw the car I was too far in the intersection of Florida Street when I saw it. When I saw that it was going to hit, I was too far in the intersection to do anything about it."

Plaintiff, on cross-examination, testified: "I did not tell the officer that before I got to the intersection I saw Mrs. Hales' car coming at a high rate of speed and knew she wasn't going to stop."

Plaintiff, on further cross-examination, testified: "I saw Mrs. Hales' car when it got to the intersection. I knew it was a stop sign there, but before I realized she wasn't going to stop, I was too far in the intersection to do anything about it. The first time I saw Mrs. Hales' car was when I was entering the intersection. . . . When I saw her, I was entering the intersection, . . . it seemed to me that she was coming at a high rate of speed. Sure, I saw her, but I couldn't tell how far away it was. I couldn't say if it was as far as from here to the back of the courtroom. . . . I would say that she probably was three or four car-lengths back from the intersection when I first saw her. As to whether I turned left, or tried to stop, when I discovered that she was going to hit me, I tried to do everything I could. She was coming at a high rate of speed. I tried my best to go to the left, that's all I could do. I didn't have time to do anything else."

Street, on direct examination, testified: "He (plaintiff) stated that he was approaching the intersection, that he saw Mrs. Hales coming toward him at a high rate of speed and that she ran the stop sign and came in contact with the right side of his vehicle causing him to lose control . . ."

Street, on cross-examination, testified: "The plaintiff . . . stated that he was approaching the intersection, that he had not yet gotten to the intersection when he first saw her, that he was approaching. . . . The plaintiff told me that he was approaching the intersection and that he saw Mrs. Hales' car coming at a high rate of speed."

In pleading contributory negligence, defendants did not allege, conditionally or otherwise, that Mrs. Hales approached the intersection at a high rate of speed or otherwise in such manner as to give notice to plaintiff she was not going to stop in obedience to the stop sign. On the contrary, they alleged Mrs. Hales "did not come to a complete stop for the stop sign which is erected on Florida Street" and that she "slowed before entering the intersection and, seeing nothing coming, proceeded into the intersection." It is noted the investigating officer testified Mrs. Hales told him "that she stopped for the stop sign, looked for oncoming traffic, did not see anything . . ."

Contributory negligence is an affirmative defense. "(I)t must be set up in the answer and proved on the trial." G.S. 1-139. "A plea of contributory negligence must allege negligent acts or omissions on the part of the plaintiff which contributed to his injury as one of its proximate causes." *Maynor v. Pressley,* 256 N.C. 483, 124 S.E. 2d 162. A plaintiff must prove negligence substantially as alleged in his complaint. *Messick v. Turnage,* 240 N.C. 625, 83 S.E. 2d 654. It is equally true that a defendant must prove (contributory) negligence substantially as alleged in his answer.

Conceding, without deciding, there was evidence which, when considered in the light most favorable to defendants, was sufficient to support a finding that plaintiff saw, or by the exercise of reasonable care should have seen, Mrs. Hales approaching said intersection at a high rate of speed and that she could not or would not stop in obedience to the stop sign when plaintiff was such distance from the intersection that he could, if driving at a reasonable and lawful rate of speed, have avoided the collision by the exercise of due care, defendants do not allege plaintiff was negligent in this respect. As indicated, defendants' specifications of plaintiff's alleged negligence are based on a different state of facts. Proof without allegation is as unavailing as allegation without proof. *Messick v. Turnage, supra.* Consequently, contributory negligence, if any, of plain-

tiff in this respect would not justify submission of an issue as to contributory negligence.

The conclusion reached is that the evidence when considered in the light most favorable to defendants was insufficient to warrant submission of the contributory negligence issue to the jury with reference to the specifications of plaintiff's contributory negligence alleged in defendants' answer.

For error in submitting the contributory negligence issue, the verdict and judgment are vacated and plaintiff is awarded a new trial.

New trial.