HERBERT H. DAWSON, ADMINISTRATOR OF THE ESTATE OF STANLEY PARKS, DECEASED v. CLARENCE B. JENNETTE, ORIGINAL DEFENDANT, AND ARTHUR BRIGHT, ADDITIONAL DEFENDANT

No. 32

(Filed 14 April 1971)

1. Automobiles § 19— right of way at intersections — T-intersection

With reference to the right of way as between two vehicles approaching and entering an intersection, the law of this State makes no distinction between a "T" intersection and one at which the two highways cross each other completely. G.S. 20-38; G.S. 20-155; G.S. 20-158.

2. Automobiles § 19— right of way at intersection — assumption by motorist having right of way

Nothing else appearing, the driver of a vehicle having the right of way at an intersection is entitled to assume and to act, until the last moment, on the assumption that the driver of another vehicle approaching the intersection will recognize his right of way and will stop or reduce his speed sufficiently to permit him to pass through the intersection with safety.

3. Automobiles §§ 19, 57— accident at T-intersection — stop sign not in place — right of way of motorist on dominant highway

In a wrongful death action resulting from a two-car collision at a T-intersection at which the stop sign had fallen down, the driver on the dominant highway, who knew that the intersecting servient street on his right was controlled by the stop sign but who was unaware that the sign had fallen on the ground, was not negligent in failing to yield the right of way to the motorist who entered the intersection from the servient street without stopping.

4. Rules of Civil Procedure § 50— motion for directed verdict — consideration of evidence

On a motion by defendant for a directed verdict, the plaintiff's evidence must be taken in the light most favorable to him and he is

entitled to the benefit of all reasonable inferences which may be drawn therefrom.

**5. Automobiles § 57— accident at T-intersection — stop sign not in place — negligence of driver on servient street**

    In a wrongful death action resulting from a two-car collision at a T-intersection at which the stop sign had fallen down, the plaintiff administrator, whose deceased was riding in the automobile on the dominant highway, offered sufficient evidence to support jury findings (1) that the defendant's driver approaching the intersection from the servient street could have seen 150 feet away, had she been keeping a proper lookout, that she was approaching the intersection and (2) that such driver was negligent in proceeding to the very verge of the intersection at 30 miles per hour.

**6. Automobiles § 57— accident at T-intersection — stop sign not in place — negligence of owner-passenger**

    In a wrongful death action resulting from a two-car collision at a T-intersection at which the stop sign had fallen down, the plaintiff, whose deceased was riding in the automobile on the dominant highway, offered sufficient evidence to support a jury finding that the owner-passenger of the car on the servient street was familiar with the intersection and was negligent in failing to inform his agent-driver, who was unfamiliar with the street, that the intersection was ahead.

APPEAL by plaintiff from the judgment of the Court of Appeals, reported in 10 N.C. App. 252, 178 S.E. 2d 118, affirming the judgment of *Bundy, J.,* at the 18 May 1970 Civil Session of LENOIR, allowing the motion of the original defendant for a directed verdict and dismissing the action as to him.

    This is a suit for the wrongful death of Stanley Parks who was killed 4 July 1967 in an automobile collision at the "T" intersection of Rural Paved Road #1578 (Airport Road) and Rural Paved Road #1570 (Heritage Street extended) near the city limits of Kinston. Parks was a passenger in the automobile owned by him and driven, with his permission, by Arthur Bright, the additional defendant, eastwardly on the Airport Road, the top of the "T." Clarence Jennette, the original defendant, was riding as a passenger in the automobile owned by him and driven, with his consent, by his daughter, Sandra Jennette Dolan, northwardly on Heritage Street, the stem of the "T." The collision occurred at approximately 7:45 p.m., at which time it was still daylight, the weather being fair. The speed limit on each road was 55 miles per hour. For many years a stop sign, erected by proper authority, had stood at this intersection facing northbound traffic on Heritage Street. This stop sign was lying

on the ground at the time of the collision. The front of the Jennette car struck the right side of the Parks car at the door. Parks was killed in the collision.

The complaint alleges that Jennette was negligent "in the manner and under the circumstances" in which Sandra Dolan, driver of the Jennette car as agent of Jennette, was operating the automobile; that she drove at a speed unreasonable under the circumstances, she did not maintain a proper lookout and did not keep the Jennette automobile under proper control when she saw or should have seen that the street on which she was traveling ended at the intersection; and that Jennette, a passenger, directed the operation of the automobile or had a right and duty to do so.

The original defendant filed answer denying negligence by his driver, Sandra Dolan, alleging contributory negligence by Parks in that his driver and agent, Arthur Bright, drove the Parks vehicle at a speed greater than was reasonable under the circumstances, without keeping a proper lookout and while under the influence of some intoxicating beverage, Parks, himself, failing to use due care for his own safety in that he failed to remonstrate and admonish Bright concerning the manner of his driving. The further answer also alleged a cross-action against Arthur Bright, driver of the Parks vehicle, for contribution and a counterclaim against the estate of Parks and a counterclaim or cross-action against Bright for personal injuries and property damage sustained by the original defendant, Jennette, in the collision.

Bright, having been made an additional defendant by virtue of the cross-action against him, filed answer denying any negligence by him and asserting a counterclaim against Jennette for Bright's own personal injuries in the collision.

The original defendant filed a reply to the counterclaim of Bright denying all allegations of negligence by Sandra Dolan and Jennette, Bright's allegations in this respect being the same as those of the plaintiff.

At the conclusion of the plaintiff's evidence, Judge Bundy allowed the motion of the original defendant for a directed verdict in his favor and dismissed the action as to the original defendant. Thereupon, by consent of all the parties, the counter-

claims of the original defendant and of the additional defendant against each other and the counterclaim of the original defendant against the plaintiff were all dismissed.

At the trial it was stipulated that: (1) Sandra Dolan was operating the Jennette automobile as Jennette's agent and within the scope of the agency or master-servant relationship at the time of the collision; (2) Parks was the owner of the automobile in which he was riding as a passenger and which, at the time of the collision, was being operated by Arthur Bright with the permission of Parks; and (3) Parks died as the result of injuries sustained in the collision.

The plaintiff's evidence further tended to show:

The paved portion of each road was 20 feet in width, the Heritage Street pavement widening out to 35 feet where it joins the pavement of Airport Road. The stop sign was lying on the ground. (Nothing indicates that it was knocked down in the collision or thereafter.) The sign was standing facing traffic going northward on Heritage Street the day before the collision and there had been a stop sign so located for a period of at least 20 years prior to the collision. Neither driver had been drinking. There was no sign indicating an approach to an intersection erected on Heritage Street. A sign on Airport Road indicated approach to a side road coming in from the south (Heritage Street). The pavement on Airport Road bore a broken white center line. The pavement on Heritage Street also bore a broken white center line with a solid yellow line in the northbound traffic lane for the last 100 feet approaching the intersection, indicating that passing was forbidden.

For a quarter of a mile approaching the intersection Heritage Street is straight and from a point 150 feet south of the intersection one traveling northward on Heritage Street could see Airport Road "completely" (i.e., "the whole intersection"), and from that point could see westwardly along Airport Road for from 50 to 60 feet. Due to growing tobacco in the neighboring fields, one would have to reach a point 20 to 30 feet from the intersection before he could see "down Airport Road." A private dirt road, or field path, extends northward from the intersection and opposite Heritage Street. Being lower than Airport Road, one traveling on Heritage Street could not see it until practically in the intersection.

The investigating patrolman found debris near the center line of Airport Road, 15 feet of tire marks, leading south from the point where the debris was found to a point on Heritage Street six feet south of Airport Road, and an additional 31 feet of tire marks from that point to where the Jennette vehicle came to rest on the north side of Airport Road. The Parks vehicle, also on the north shoulder of Airport Road, lay on its left side 58 feet from the debris.

Both Bright and Jennette were familiar with the roads and the intersection. Sandra Dolan, a resident of New York, was not familiar with it but had driven through it, headed in the opposite direction (*i.e.*, from Airport Road onto Heritage Street) that day. Her parents, both of whom were in the car, were giving her "directions." They were returning from her sister's home to Swan Quarter. Jennette did not tell her she was coming to an intersection as she approached it and she was not aware that an intersection was ahead. She testified that her speed was approximately 30 miles per hour. Jennette told the investigating patrolman he did not realize and did not tell Sandra Dolan they were at the intersection; they were talking and he forgot to tell her.

Arthur Bright told the investigating patrolman that he did not see the Jennette car until it started out into the intersection and he then swerved left to try to avoid it. When called as a witness for the plaintiff, Bright testified that before reaching the intersection he had slowed up, he entered the intersection driving between 40 and 45 miles per hour, he was familiar with Airport Road, on which he was traveling, and he knew there was a stop sign facing traffic coming into the intersection from Heritage Street. When he saw the Jennette car coming up to the intersection and saw it was going too fast to stop, he swerved to the left. The Jennette car struck his car, bending the right front door in on Parks, a passenger in the right front seat. Parks was crippled and Bright drove for him whenever requested to do so.

*Beech & Pollock by H. E. Beech, for plaintiff appellant.*

*Whitaker, Jeffress & Morris by A. H. Jeffress, for defendant appellee.*

LAKE, Justice.

[1]  With reference to the right of way as between two vehicles approaching and entering an intersection, the law of this State makes no distinction between a "T" intersection and one at which the two highways cross each other completely. G.S. 20-38 defines certain words and phrases as used in the Motor Vehicle Act of 1937, G.S. ch. 20, Art. 3, which article includes G.S. 20-155 and G.S. 20-158. It defines "intersection" as follows: "The area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at any angle, whether or not one such highway crosses the other." The word "intersection" as used in the Public Laws of 1913, ch. 107, which regulated the speed of motor vehicles traversing an intersection was held by this Court to apply to a "T" intersection in *Manly v. Abernathy,* 167 N.C. 220, 83 S.E. 343, which was followed in *Fowler v. Underwood,* 193 N.C. 402, 137 S.E. 155.

In the comparatively recent case of *Brady v. Beverage Co.,* 242 N.C. 32, 86 S.E. 2d 901, there was a collision at a "T" intersection at which no stop sign had been erected. The top of the "T" was a paved highway. The stem of the "T" was a public dirt road which came into the paved road from the plaintiff's right. An embankment blocked the view of each driver along the other road. The defendant's truck came very slowly out of the dirt road onto the paved road without stopping and commenced a left turn. The car in which the plaintiff was a passenger struck the truck before it cleared the right hand lane of the paved road. The Superior Court denied the defendant's motion for a judgment of nonsuit. This Court reversed, saying:

"[T]he two roads here involved were public roads of equal dignity, neither having been designated by the State Highway and Public Works Commission as 'main traveled or through highway' as defined in G.S. 20-158(a). * * *

"All the evidence further shows the truck of the defendant came to, and entered the intersection before the automobile in which plaintiff was riding reached the intersection, and that the truck approached the intersection from the automobile's right side of the road. Under such factual situation the truck of defendant had the right of way.

\* \* \*

"[T]he driver of defendant's truck had the right of way, that is, the right to proceed uninterruptedly in a lawful manner. He was not required to stop."

The pertinent portion of G.S. 20-158 reads as follows:

*"Vehicles must stop and yield right-of-way at certain through highways.* — (a) The State Highway Commission, with reference to State highways, \* \* \* are hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to full stop before entering or crossing such designated highway, and whenever any such signs have been so erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto and yield the right-of-way to vehicles operating on the designated main traveled or through highway and approaching said intersection. \* \* \* ."

In the light of the above mentioned definition of "intersection" this statute applies to a "T" intersection. Thus, when the stop sign was erected at the intersection here in question, facing traffic moving towards the intersection on Heritage Street, the right of way was vested in vehicles entering the intersections upon Airport Road from either direction. With such sign in position, it was the duty of a vehicle approaching the intersection on Heritage Street to stop and yield the right of way to a vehicle approaching on Airport Road and so close to the intersection that there would be danger of collision if the vehicle on Heritage Street entered the intersection. See: *Bennett v. Stephenson,* 237 N.C. 377, 75 S.E. 2d 147; *State v. Hill,* 233 N.C. 61, 62 S.E. 2d 532.

The pertinent portion of G.S. 20-155 provides:

*"Right-of-Way.*— (a) When two vehicles approach or enter an intersection and/or junction at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right except as otherwise provided in § 20-156 and except where the vehicle on the right is required to stop by a sign erected pursuant to the provisions of § 20-158 and except where the vehicle on the right is required to yield the right-of-way by a sign erected pursuant to the provisions of § 20-158.1."

Dawson v. Jennette

Had there never been a stop sign erected at the intersection here in question, G.S. 20-155(a) would apply, the other exceptions therein referred to not being applicable to this case, and the defendant's vehicle would have had the right of way. *Brady v. Beverage Co., supra.* Two vehicles approach or enter an intersection at approximately the same time, within the meaning of G.S. 20-155(a) when in view of their respective distances from the intersection, their relative speeds and other attendant circumstances, the driver of the vehicle on the left should reasonably apprehend danger of collision unless he delays his progress until the vehicle on the right has passed. *Taylor v. Brake,* 245 N.C. 553, 96 S.E. 2d 686; *Bennett v. Stephenson, supra; State v. Hill, supra.*

It is apparent that the two automobiles involved in this collision entered the intersection at "approximately the same time" under this test, the slightly greater distance into the intersection traveled by the Parks vehicle being accounted for by its slightly greater speed. According to the plaintiff's evidence, they were traveling at 40 and 30 miles per hour, respectively. At these speeds, each vehicle would have traveled from its edge of the intersection to the point of impact in less than one second. The right of way as fixed by G.S. 20-155(a) is not determined by a fraction of a second.

[2] Nothing else appearing, the driver of a vehicle having the right of way at an intersection is entitled to assume and to act, until the last moment, on the assumption that the driver of another vehicle, approaching the intersection, will recognize his right of way and will stop or reduce his speed sufficiently to permit him to pass through the intersection in safety. *Moore v. Hales,* 266 N.C. 482, 146 S.E. 2d 385; *Jackson v. McCoury,* 247 N.C. 502, 101 S.E. 2d 377; *Brady v. Beverage Co., supra; Bennett v. Stephenson, supra.*

In *Kelly v. Ashburn,* 256 N.C. 338, 123 S.E. 2d 775, and in *Tucker v. Moorefield,* 250 N.C. 340, 108 S.E. 2d 637, this Court had before it the question of liability for injury in a collision at an intersection at which, prior to the collision, a stop sign, duly erected, had been knocked or taken down, otherwise than by the proper authorities for the purpose of changing the designation of the dominant highway as such. The Kelly case, being the more recent, controls insofar as these decisions are not in harmony. There, as here, the driver of the vehicle on the

highway, which the stop sign had designated as the dominant highway, knew that the stop sign had been so erected but did not know of its disappearance or removal. The driver of the vehicle on the highway, which the stop sign had designated as the servient highway, did not know there had ever been such a stop sign erected at the intersection. He approached the intersection from the right of the other driver.

This Court held in the Kelly case that the removal of the stop sign would not take away the right of the driver of the vehicle on the street, designated by the sign as the dominant highway, to treat it as such and to proceed into the intersection on the assumption that the other vehicle would yield the right of way to him. This Court also said in the Kelly case that the responsibility of the driver of the vehicle on the highway, designated by the sign as the servient highway, but who did not know it had ever been so designated, must be judged in the light of conditions confronting him, namely, an unmarked intersection, at which the other vehicle was approaching from his left. The Court said, "Consequently, a collision at an intersection where a stop sign has been erected and then removed or defaced may result from the negligence of one party, or both, or neither."

[3] The plaintiff's evidence is that the stop sign, erected so as to face traffic moving into the intersection along Heritage Street, had been in place for 20 years and was in place the night before the collision. The driver of the Parks vehicle testified that he was familiar with the intersection and knew of the erection of the stop sign, but not of its being down on the ground, as he approached the intersection on this occasion. Consequently, there being no other evidence of negligence on the part of this driver, the directed verdict in favor of the original defendant cannot be sustained on the ground of contributory negligence by the deceased owner-passenger, derived from the failure of his agent-driver to yield the right of way to the Jennette vehicle. There is nothing in the record to indicate that the deceased, himself, knew the sign was no longer in position on Heritage Street.

Were this suit against the driver of the Jennette vehicle, the second portion of *Kelly v. Ashburn, supra,* would be applicable, for the plaintiff's evidence is that she was not familiar with this intersection and so did not know that a stop sign had been erected there. Thus, had she known she was approaching an intersection, she would have reason to assume that she had the right of way over the Parks vehicle approaching from her

left. *Brady v. Beverage Co., supra.* However, the action is not against the driver of the Jennette vehicle, but against the owner-passenger, who was giving his agent-driver directions but did not realize, or forgot to tell her, that they were approaching the intersection.

[4, 6] The plaintiff's evidence is that the original defendant, the owner-passenger, was familiar with the intersection. While this does not necessarily mean that he knew a stop sign had been erected requiring a vehicle approaching the intersection along Heritage Street to stop and yield the right of way, the jury might reasonably draw that inference from his statement to the investigating patrolman that he was familiar with the intersection. On a motion by a defendant for a directed verdict, as was formerly the rule with reference to a motion for judgment of nonsuit, the plaintiff's evidence must be taken in the light most favorable to him and he is entitled to the benefit of all reasonable inferences which may be drawn therefrom. *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47; Strong, N. C. Index 2d, Trial, § 21. Thus, the second rule of *Kelly v. Ashburn, supra,* with which *Tucker v. Moorefield, supra,* is in accord, is not applicable here and does not support the action of the trial court in granting the original defendant's motion for a directed verdict.

[5] Furthermore, the driver of the Jennette vehicle, whose negligence would be attributed to the original defendant on the principle of respondeat superior, in a deposition introduced in evidence by the plaintiff, testified that she did not know she was approaching an intersection. A reasonable inference, which might be drawn from this testimony, is that she did not become aware of the intersection until approximately six feet from it, at which point tire marks appeared on the Heritage Street pavement.

Even though, under the foregoing rules, a driver has the right of way at an intersection, it is incumbent upon him, in approaching and traversing the intersection, to drive at a speed no greater than is reasonable under the conditions than existing, to keep his vehicle under control, to keep a reasonably careful lookout and to take such action as a reasonably prudent person would take to avoid collision when the danger of one is discovered or should have been discovered. *Primm v. King,* 249 N.C.

228, 106 S.E. 2d 223; *Blalock v. Hart,* 239 N.C. 475, 80 S.E. 2d 373. It is the duty of a driver to keep a lookout in the direction of travel. *Bowen v. Gardner, supra; Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330. A motorist, who does not keep such a lookout, is nevertheless charged with having seen what he could have seen had he looked. His liability to one injured in a collision with his vehicle is determined as it would have been had he looked, observed the prevailing conditions and continued to drive as he did. *Raper v. Byrum,* 265 N.C. 269, 144 S.E. 2d 38.

The plaintiff's evidence is that the entire intersection was clearly visible to a driver on Heritage Street from a point 150 feet south of the intersection. It is also to the effect that such driver's view of traffic approaching on Airport Road was obstructed by a tobacco crop until within 60 feet of the intersection. It might reasonably be inferred from this evidence that the original defendant's agent-driver, had she been maintaining a lookout, would have seen, when 150 feet from the intersection, that she was approaching a "T" intersection, at which she would necessarily have to turn in one direction or the other. The record does not show in which direction the intended destination of the Jennette vehicle lay. Inferring that she could have so seen, and therefore is to be deemed so to know, and also deemed to know that her view of traffic approaching on the other highway was obstructed, a jury could find it was negligence for such driver to proceed to the very verge of the intersection at a speed of 30 miles per hour and that such negligence was the proximate cause of the collision.

[6]    Thus, taking the evidence of the plaintiff to be true, interpreting it in the light most favorable to the plaintiff and giving the plaintiff the benefit of all inferences reasonably to be drawn therefrom, the jury could have found, though, of course, not required to do so, that Sandra Dolan, the agent-driver of the original defendant was negligent in approaching the intersection as she did, which negligence would be attributed to the defendant under the doctrine of respondeat superior, and could have found that the original defendant, himself, was negligent in failing to inform his agent-driver they were approaching an intersection with a highway, which he knew had been designated a dominant highway by the erection of a stop sign so that vehicles traveling on it might not yield to her the right of way. There being no evidence of contributory negligence, either of

these conclusions by the jury would have supported a verdict for the plaintiff, it being stipulated that Parks died as the result of injuries sustained in this collision. It follows that the allowance of the motion by the original defendant for a directed verdict and the entry of a judgment dismissing the plaintiff's action were error.

The matter is remanded to the Court of Appeals for the entry by it of a judgment allowing a new trial.

Reversed and remanded.